[No. B182816. Second Dist., Div. Four. Nov. 17, 2008.]

MORDECHAI KACHLON et al., Plaintiffs and Appellants, v.
DEBRA W. MARKOWITZ et al., Defendants and Appellants.

DONALD J. MARKOWITZ et al., Plaintiffs, Cross-defendants and
Appellants, v.
MORDECHAI KACHLON et al., Defendants, Cross-complainants and
Appellants;
BEST ALLIANCE FORECLOSURE AND LIEN SERVICES, Defendant
and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

\*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of parts I.B.4. through I.B.6. and part II.

## Counsel

The Law Office of John Derrick and John Gregory Derrick for Plaintiffs and Appellants and for Defendants, Cross-complainants and Appellants.

Gary G. Kuist and Timothy D. McGonigle for Plaintiffs, Cross-defendants and Appellants.

Edwin B. Stegman for Defendant and Appellant Debra W. Markowitz.

Adleson, Hess & Kelly, Phillip M. Adleson, Berger Kahn and G. Arthur Meneses for Defendant and Appellant Best Alliance Foreclosure and Lien Services.

Kirby & McGuinn, Martin T. McGuinn and Dean T. Kirby, Jr., for United Trustee's Association as Amicus Curiae on behalf of Defendant and Appellant Best Alliance Foreclosure and Lien Services.

## OPINION

**WILLHITE, J.—**

### INTRODUCTION

This appeal arises following a joint trial in two consolidated lawsuits involving, broadly speaking, allegations of wrongful foreclosure under a deed of trust and breach of a home improvement contract. The relationships among the parties giving rise to the lawsuits are complicated. The relevant events began in September 1998, when the Markowitzes (Donald and Debra, husband and wife) purchased a residence from the Kachlons (Mordechai and Monica, also husband and wife).[1] As part of the transaction, the Markowitzes executed a promissory note for $53,000 in favor of the Kachlons, secured by a second deed of trust on the home. Thereafter, Mordechai provided contractor services for the Markowitzes involving various home improvement projects. Debra, an attorney, provided legal services to Mordechai, and also became romantically involved with him.

The parties' dealings soured, resulting in two lawsuits. In the first, Mordechai sued the Markowitzes for allegedly breaching his home improvement contract and failing to repay personal loans. In the second, the Markowitzes sued the Kachlons, alleging that they wrongfully initiated nonjudicial foreclosure proceedings on the residence under the deed of trust. The Markowitzes also named as a defendant, among others, Best Alliance Foreclosure and Lien Services (Best Alliance), which the Kachlons substituted in as the trustee to conduct the nonjudicial foreclosure. In the Markowitzes' action, Mordechai filed a cross-complaint against Debra for legal malpractice and breach of fiduciary duty.

Following consolidation, the two lawsuits were tried together. The results of the trial, along with the trial court's rulings on motions for directed verdict, judgment notwithstanding the verdict, and attorney fees, create a thicket of appeals by the Kachlons, Donald and Debra Markowitz (who appeal separately, having been separately represented in the trial court as well), and Best Alliance.

So as to discuss related issues from the appeals and cross-appeals together, we divide our opinion into two main parts. We ultimately affirm the judgment, except for the court's award of $16,000 in attorney fees to Debra Markowitz under Civil Code section 1717 as against the Kachlons and Best

---

[1] For clarity, we often refer to the Markowitzes and Kachlons by their first names. We intend no disrespect.

Alliance. We remand that issue to the trial court for a redetermination of the attorney fees to which Debra is entitled under Civil Code section 1717, and direct the court to use the lodestar method as described in *PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095–1096 [95 Cal.Rptr.2d 198, 997 P.2d 511] (*PLCM*).

In part I of our opinion, we consider issues relating to the Markowitzes' lawsuit against the Kachlons and Best Alliance for wrongful foreclosure on the residence under the deed of trust. In the published portion of part I, we hold that Civil Code section 2924 deems the statutorily required mailing, publication, and delivery of notices in nonjudicial foreclosure, and the performance of statutory nonjudicial foreclosure procedures, to be privileged communications under the qualified common interest privilege of Civil Code section 47, subdivision (c)(1). We conclude that Best Alliance's recording of the notice of default on instruction by the Kachlons was privileged, that the evidence failed to demonstrate Best Alliance acted with malice, and that therefore Best Alliance was immune from the Markowitzes' slander of title and negligence claims. Also, we reject the Markowitzes' claim that the scope of the privilege is limited by another provision of section 2924, which grants the trustee immunity for any good faith error resulting from reliance on information provided in good faith by the beneficiary regarding the default under the deed of trust. We further conclude that, unlike Best Alliance, the Kachlons are not entitled to privilege protection. Finally, we hold that the trial court properly found, under Civil Code section 1717, that the Markowitzes were prevailing parties entitled to attorney fees against the Kachlons and Best Alliance on the Markowitzes' equitable claims arising out of the $53,000 promissory note and deed of trust.

In the unpublished portion of part I, we conclude that the court did not abuse its discretion in determining the amount of attorney fees to which Donald was entitled. Regarding the single aspect of the judgment as to which we reverse, we conclude that the trial court erred in limiting Debra's award of attorney fees on the claims arising out of the promissory note and trust deed to an amount purportedly based on the contingency fee agreement between Debra and her counsel. We remand solely for a redetermination of the attorney fees to which Debra is entitled under Civil Code section 1717.

In part II of our opinion, which is unpublished, we consider issues relating to the Kachlons' action to recover sums allegedly owing on the home improvement contract and unsecured personal loans. We find no error in this portion of the case.

## I. THE WRONGFUL FORECLOSURE AND RELATED CLAIMS

### A. FACTUAL AND PROCEDURAL BACKGROUND

#### 1. *The Original Promissory Note and Second Deed of Trust*

In 1998, the Markowitzes purchased a home from the Kachlons. In the sale, the Markowitzes executed a promissory note for $53,000 in favor of the Kachlons, secured by a second deed of trust on the residence. In addition, the parties agreed that Mordechai Kachlon would take possession of a 1995 Jaguar automobile owned by the Markowitzes, and Donald Markowitz would continue to make all payments on the car. These payments were to be credited toward the monthly payments due on the promissory note. Debra Markowitz and Mordechai also agreed that Debra would provide legal services to Mordechai, which were to be credited toward the amount owed on the promissory note.

Over time, the parties' entanglements increased, as Mordechai began performing various construction and home improvement projects at the Markowitzes' home, and Mordechai and Debra began an affair. Eventually, in late 2001, Donald initiated divorce proceedings from Debra.

#### 2. *The Kachlons' First Nonjudicial Foreclosure, and the 2002 Reduction of the Note*

In early 2002, a dispute arose between the Kachlons and the Markowitzes regarding the amount still owing under the promissory note. Donald asserted that he had made over $30,000 in payments on the Jaguar that should have been credited against the note. In early May 2002, the Kachlons initiated nonjudicial foreclosure proceedings, claiming the Markowitzes were in default on the promissory note. Ultimately, the Kachlons and the Markowitzes entered into an oral agreement to resolve the dispute. The Kachlons agreed to withdraw the foreclosure action, and acknowledge that the obligation on the promissory note had been reduced by $41,000. In turn, the Markowitzes agreed to transfer title to the Jaguar to Mordechai. In late May 2002, the parties executed a written agreement stating the obligation on the promissory note was reduced by $41,000 to reflect payments and credits received from the Markowitzes.

Later in 2002, Mordechai insisted the Markowitzes still owed him additional money. In July 2002, Debra signed an unsecured promissory note in Mordechai's favor. Under the note, Debra agreed to pay Mordechai $7,000 in return for his forgiving $7,000 due on the original $53,000 note.[2]

### 3. *Donald's Line of Credit*

In July 2002, City National Bank (Bank) agreed to extend to Donald a $200,000 line of credit, which was to be secured by a new second deed of trust on the Markowitz residence. To complete this transaction, the Bank required that the original $53,000 promissory note issued by the Markowitzes to the Kachlons be repaid in full, and that the Kachlon's second deed of trust, which secured the note, be reconveyed. The Bank retained Fidelity National Title Company (Fidelity) to provide a policy of title insurance, and Fidelity also agreed to act as a subescrow to hold and exchange money and documents between Donald and the Kachlons.

Fidelity sent the Kachlons a "request for demand" in July 2002 stating that Donald had made a loan request to be secured by the Markowitz residence, and that the encumbrance held by the Kachlons was to be paid in full. The request for demand was accompanied by a beneficiary's demand in which the Kachlons were to state the amount remaining due on the note, and a request for reconveyance in which they were to consent to reconveyance of the deed of trust upon receipt of payment.

Fidelity requested that the Kachlons complete and sign the beneficiary's demand and request for reconveyance, and deliver them along with the original promissory note and deed of trust to Fidelity.

On or about July 24, 2002, Mordechai delivered the documents. As completed, the beneficiary's demand stated that $12,000 remained due on the note, and requested a check in that amount made payable to Mordechai and Monica Kachlon. The request for reconveyance authorized reconveyance upon satisfaction of the note. On both documents, signatures for Mordechai and Monica Kachlon appear at the bottom. Mordechai had signed for himself. Debra, however, had signed Monica's name on both.

After delivery of the documents, Mordechai received from Fidelity a check for $12,000, payable to both Mordechai and Monica. Mordechai and Monica endorsed the back of the check and deposited it in their joint account.

---

[2] Debra signed the note as an individual and "on behalf of Donald J. Music and the publishing company for the song 'Time of My Life.'" Donald Markowitz is a published songwriter. "Time of My Life" is one of his compositions.

Although Fidelity had not yet recorded a reconveyance of the Kachlon deed of trust, a new deed of trust in favor of the Bank was recorded, and Donald received his line of credit.

### 4. *The Kachlons' Objection to a Reconveyance of Their Deed of Trust*

In January 2003, Fidelity commenced the statutory procedure for clearing title pursuant to Civil Code section 2941, subdivision (b)(3), whereby a title insurer may prepare and record a release of obligation. Fidelity sent written notice to the Kachlons that their deed of trust had not been removed, and advised them that unless they objected, Fidelity was going to record a release of the obligation. The Kachlons did object, and told Fidelity that the promissory note had not been paid in full. Mordechai informed Fidelity that Monica's signatures on the beneficiary demand and request for reconveyance had been forged by Debra. Fidelity did not record a deed of reconveyance, and the Kachlons' deed of trust remained in place. The Kachlons' original deed of trust and original promissory note remained in Fidelity's possession, even at the time of trial in this matter.[3]

### 5. *The Second Foreclosure Attempt, and the Kachlons' Substitution of Best Alliance as Trustee in Their Third Foreclosure*

In March 2003, the Kachlons initiated a second foreclosure and caused a notice of default to be recorded. The trustee dismissed the proceeding after seeing the documents evidencing full satisfaction of the $53,000 note.

In June 2003, the Kachlons substituted Best Alliance as trustee. The Kachlons executed and delivered to Best Alliance a declaration of default stating that the debt secured by the deed of trust was in default, and instructing it to commence nonjudicial foreclosure proceedings. The Kachlons gave Best Alliance copies of the $53,000 promissory note and deed of trust, rather than the originals (which remained in the possession of Fidelity). Best Alliance then obtained from a title company a "trustee's sale guaranty," the purpose of which is to inform a trustee of the information necessary to conduct a nonjudicial foreclosure, such as the identity of the vested owner and the persons entitled to notice.

---

[3] The Markowitzes named the Bank and Fidelity as defendants in this action based upon their failure to record a reconveyance of the deed of trust. The Bank was dismissed without prejudice prior to trial, and the trial court entered judgment in favor of Fidelity after granting its motion for nonsuit. In a prior appeal (*Markowitz v. Fidelity Nat. Title Co.* (2006) 142 Cal.App.4th 508 [48 Cal.Rptr.3d 217]), we affirmed the judgment in favor of Fidelity. We held that the relevant statutes did not impose on Fidelity, as a subescrow holder, the duty to record a deed of reconveyance. (*Id.* at pp. 521–525; see Civ. Code, § 2941.) Our conclusion did not rely on Debra's admission that she forged Monica's signature on the request for reconveyance. The Bank and Fidelity are not parties to this appeal.

The trustee's sale guaranty showed that the deed of trust securing the Kachlons' promissory note was still of record, and that no prior reconveyance had been recorded. Best Alliance recorded and mailed a notice of default which stated, based on the information given to it by Mordechai, that only $12,000 had been paid on the obligation, and that $56,899.91 was due under the promissory note.

### 6. Best Alliance's Suspension of Foreclosure

Donald's attorney informed Best Alliance that there was a dispute as to whether money was owed and provided it with evidence that the debt had in fact been satisfied (including the executed beneficiary's demand and request for reconveyance that Mordechai had submitted to Fidelity). Best Alliance's president, Sid Richman, related this information to Mordechai, but Mordechai disputed that the debt had been satisfied. Richman advised Donald's attorney and the Kachlons that Best Alliance would put its file on hold until the dispute was resolved. Best Alliance refused to dismiss the foreclosure proceeding, but did not proceed with a foreclosure sale.

### 7. Markowitzes' Complaint in Case No. BC301492

In August 2003, the Markowitzes filed their lawsuit challenging the nonjudicial foreclosure. The premise underlying all the claims was that the foreclosure was wrongful because the promissory note to the Kachlons had been fully satisfied.

As against the Kachlons, the Markowitzes sought damages on causes of action for breach of the Kachlons' asserted statutory duty to secure a reconveyance of the deed of trust under former subdivision (b)(3) (now subd. (b)(1)) of Civil Code section 2941, and for slander of title (also styled attempting to obtain title by fraud). Debra alone sued Mordechai for intentional infliction of emotional distress and intentional destruction of personal property. As against Best Alliance, the Markowitzes sought damages on two claims: slander of title (also styled fraudulent business practices) and negligence.

Besides damages, the complaint sought equitable remedies against the Kachlons and Best Alliance for declaratory relief (seeking cancellation of the Kachlon's note and a reconveyance of the deed of trust), an injunction against the foreclosure, and quiet title in favor of the Markowitzes. Before trial, the Markowitzes obtained a temporary restraining order, and later a preliminary injunction, preventing the Kachlons and Best Alliance from continuing with the foreclosure.

### 8. *Trial and Directed Verdict for Best Alliance*

Trial on the damage claims began in September 2004. After all parties rested, Best Alliance moved for a directed verdict on the claims against it for slander of title and negligence, arguing that its conduct was privileged pursuant to Civil Code sections 2924 and 47.[4] The court granted the motion as to slander of title, but denied it as to negligence.

### 9. *Jury Verdict on the Markowitzes' Claims*

#### a. *Claims Against the Kachlons*

As to the claims against the Kachlons, the jury found that the Kachlons did not breach any duty by failing to cause a reconveyance of their deed of trust, but that "the 2003 non-judicial foreclosures [were] wrongful." The jury assessed damages of $100,000 for Donald and $40,000 for Debra. Further, the jury found by clear and convincing evidence that in "the 2003 foreclosures" Mordechai acted "intentionally, fraudulently and in conscious and callous disregard for the rights of the Markowitzes." The jury awarded $150,000 in punitive damages. Finally, the jury found that Mordechai did not intentionally inflict severe emotional distress on Debra.

#### b. *Claim Against Best Alliance*

As to the negligence claim against Best Alliance, the jury found that Best Alliance did not "exercise ordinary skill and diligence in performing its duties," and awarded Donald and Debra damages of $30,000 each.

### 10. *Court's Ruling on Equitable Issues*

After the jury verdict, the parties submitted briefs on the equitable claims not decided by the jury: declaratory relief, injunctive relief, and quiet title. The court, stating that it was using the jury in an advisory capacity, found that the jury was correct in its factual determinations, and granted the relief sought by the Markowitzes. The court cancelled the promissory note, ordered

---

[4] Best Alliance entitled the motion a motion for "nonsuit." Coming after all parties had rested, however, the motion is properly construed as a motion for directed verdict (the standards applicable to nonsuit and directed verdict are the same). (Wegner et al., Cal. Practice Guide: Civil Trials and Evidence (The Rutter Group 2007) ¶ 12:220, p. 12-46.) For clarity, we refer to the motion as one for directed verdict and the court's ruling as granting a directed verdict.

the deed of trust to be reconveyed, and cleared title on the Markowitz residence in favor of the Markowitzes. Best Alliance was ordered to record both a notice of rescission of the pending foreclosure and a deed of reconveyance. The court permanently enjoined the Kachlons and Best Alliance from claiming a default or otherwise exercising the power of sale provision in the deed of trust.

The court also set aside the punitive damages award in favor of the Markowitzes because the jury did not have before it evidence of the Kachlon's net worth.

### 11. *Motions for Attorney Fees*

Relying on attorney fee clauses in the $53,000 note and deed of trust, the Markowitzes moved for attorney fees against the Kachlons and Best Alliance on their equitable claims founded on the note and trust deed. The trial court ruled that the Markowitzes were the prevailing parties and entitled to attorney fees under Civil Code section 1717. We discuss the specifics of the award under Civil Code section 1717 below in connection with the Kachlons' and Best Alliance's challenges to the award, as well as Debra's and Donald's challenges to the amount of the attorney fees they were awarded.

### 12. *The Statement of Decision*

At a hearing on January 7, 2005, the Kachlons and Best Alliance orally requested that the court prepare a statement of decision on the factual and legal bases for its decision as to each of the equitable issues decided, and also regarding the attorney fees awarded. However, they did not request that specific issues be addressed. Donald prepared a proposed statement of decision, to which the Kachlons filed objections. The Kachlons generally objected that the proposed statement of decision failed to explain the factual and legal basis for the court's decision. When the court later entered the statement of decision, it noted that the Kachlons and Best Alliance were required to specify those controverted issues as to which they requested a statement of decision, but had failed to do so.

### 13. *Posttrial Motions*

#### a. Best Alliance

Best Alliance then filed a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial, and also a motion to tax costs including attorney fees. Best Alliance argued in part that, pursuant to Civil Code section 2924, recordation of the notice of default was privileged, and that therefore

Best Alliance was immune from tort liability. The court agreed, and granted judgment notwithstanding the verdict on the Markowitzes' negligence claim against Best Alliance. Accordingly, the court entered an amended judgment that deleted the award of damages on that claim. However, the court still awarded the Markowitzes attorney fees under Civil Code section 1717 against the Kachlons and Best Alliance.

At the end of March 2005, Best Alliance filed a declaration of nonmonetary status. (Civ. Code, § 2924*l*.)[5] Best Alliance also filed a motion to vacate the amended judgment. (Code Civ. Proc., § 663.) It argued that because it was immune from tort liability, the Markowitzes should not be deemed prevailing parties as to Best Alliance, and it should not be subject to attorney fees and costs. The trial court denied the motion to vacate.

### b. *The Kachlons*

The Kachlons also filed a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial in March 2005, on essentially the same grounds as Best Alliance had presented, including a claim that their conduct was privileged under Civil Code section 2924. However, the court denied the Kachlons' motions for a new trial and judgment notwithstanding the verdict.

### 14. *The Final Judgment and the Appeals*

The final amended judgment was filed on March 30, 2005. Among other things, the judgment awarded attorney fees jointly against Best Alliance and the Kachlons based on the Markowitzes having prevailed on their equitable claims related to the wrongful foreclosure action. Donald was awarded attorney fees, for the foreclosure portion of the case, against the Kachlons and Best Alliance, jointly and severally, in the amount of $166,207.50, plus $14,572.20 for additional attorney fees incurred. The amount of the attorney fees awarded to Debra, as costs, against the Kachlons and Best Alliance, jointly and severally, was set at $16,000 for the wrongful foreclosure portion of the case.

## B. DISCUSSION

### 1. *The Directed Verdict and Judgment Notwithstanding the Verdict for Best Alliance*

We turn first to the issues raised by the court's directed verdict for Best Alliance on the Markowitzes' slander of title claim, and its judgment notwithstanding the verdict on the negligence claim.

---

[5] As we later explain in greater detail, Civil Code section 2924*l* provides a procedure whereby a trustee under a deed of trust may avoid participation in litigation and liability for damages, costs, and attorney fees.

At base, Best Alliance's liability on both claims depended on whether its recording the notice of default and its decision not to rescind the notice were wrongful. Thus, the alleged slander on the Markowitzes' title was the notice of default itself, which remained in place even after Donald's attorney provided documentation showing that the underlying promissory note had been paid. The essence of the negligence claim was that Best Alliance breached its duty of due care in recording the notice of default because it failed to obtain the original promissory note and deed of trust from the Kachlons before recording the notice, and also breached its duty by failing to rescind the notice despite being informed the debt was satisfied.

In its rulings, the court found that Best Alliance's actions were privileged under Civil Code former section 2924.[6] At the time, that statute provided in relevant part: "The mailing, publication, and delivery of notices as required herein [for nonjudicial foreclosure], and the performance of the procedures set forth in this article, shall constitute privileged communications within Section 47." (Former § 2924.)

In their cross-appeals, the Markowitzes contend that the court erred in finding Best Alliance's actions were immunized. They assert that, at most, section 2924 accords a trustee a qualified privilege, and that in any event Best Alliance's actions do not qualify for privilege protection. Best Alliance contends, on the other hand, that the privilege is absolute, and that the court correctly applied it.[7]

■ We hold that section 2924 deems the statutorily required mailing, publication, and delivery of notices in nonjudicial foreclosure, and the performance of statutory nonjudicial foreclosure procedures, to be privileged communications under the qualified common interest privilege of section 47, subdivision (c)(1). We conclude that Best Alliance's recording of the notice of default was privileged, that the evidence failed to demonstrate Best Alliance acted with malice, and that therefore Best Alliance was immune from the Markowitzes' slander of title and negligence claims. Also, we reject the Markowitzes' claim that another provision of section 2924, granting the

---

[6] All undesignated section references in our Discussion in part I are to the Civil Code.

[7] Amicus curiae United Trustee's Association argues that Best Alliance's actions were privileged, and that we have no occasion to determine the scope of the privilege because there was no finding that Best Alliance acted with malice. The scope of the privilege, however, is essential to properly analyzing the extent of protection, if any, given to Best Alliance, as well as to the Kachlons, who contend that their conduct is also immunized. Like Best Alliance, the Kachlons contend the privilege is absolute. It is also necessary to analyze the scope of the privilege in light of the opinion in *Garretson v. Post* (2007) 156 Cal.App.4th 1508 [68 Cal.Rptr.3d 230] (*Garretson*), issued after the amicus brief was filed. As explained below, we disagree with *Garretson*'s interpretation of section 2924.

trustee immunity for any good faith error resulting from reliance on information provided in good faith by the beneficiary regarding the nature and the amount of the default under the deed of trust, limits the application of the privilege. Therefore, we conclude that the trial court properly directed a verdict for Best Alliance on the Markowitzes' slander of title claim, and properly entered judgment notwithstanding the verdict on their negligence claim.

We begin with a brief review of general principles regarding nonjudicial foreclosure.

### a. *Deeds of Trust, Nonjudicial Foreclosure, and the Duties of a Trustee*

■ Under a deed of trust containing a power of sale, like the trust deed securing the Markowitzes' promissory note in favor of the Kachlons, the borrower, or "trustor," conveys nominal title to property to an intermediary, the "trustee," who holds that title as security for repayment of the loan to the lender, or "beneficiary." (See 1 Cal. Real Estate Finance Practice: Strategies and Forms (Cont.Ed.Bar 2007) §§ 4.3–4.6, pp. 196–199; 4 Miller & Starr, Cal. Real Estate (3d ed. 2000) § 10:2, p. 15 (4 Miller & Starr).) The trustee's duties are twofold: (1) to "reconvey" the deed of trust to the trustor upon satisfaction of the debt owed to the beneficiary, resulting in a release of the lien created by the deed of trust, or (2) to initiate nonjudicial foreclosure on the property upon the trustor's default, resulting in a sale of the property. (*Vournas v. Fidelity Nat. Tit. Ins. Co.* (1999) 73 Cal.App.4th 668, 677 [86 Cal.Rptr.2d 490] (*Vournas*); see 4 Miller & Starr, *supra*, §§ 10:4, p. 23, 10:111, p. 340.) The beneficiary may make a substitution of trustee, such as was done by the Kachlons in substituting Best Alliance, to conduct the foreclosure and sale. (§ 2934a; see 1 Bernhardt, Cal. Mortgage and Deed of Trust Practice (Cont.Ed.Bar 2007) § 2:13, p. 65.)

When the trustor defaults on the debt secured by the deed of trust, the beneficiary may declare a default and make a demand on the trustee to commence foreclosure. (4 Miller & Starr, *supra*, § 10:181, p. 552.) The Civil Code contains a comprehensive statutory scheme regulating nonjudicial foreclosure. Generally speaking, the statutory, nonjudicial foreclosure procedure begins with the recording of a notice of default by the trustee. (§ 2924, subd. (a)(1).)[8] After the expiration of not less than three months, the trustee must publish, post, and mail a notice of sale at least 20 days before the sale,

---

[8] In 2006, Civil Code section 2924 was amended by, inter alia, incorporating subdivisions. Our case is governed by a prior version of the statute. As here relevant, however, the 2006 amendment contained no substantive change. We cite to the current statute in discussing nonjudicial foreclosure generally.

and must also record the notice of sale at least 14 days before the sale (§§ 2924, subd. (a)(1), (2), (3), 2924f, subd. (b)(1); see *Moeller v. Lien* (1994) 25 Cal.App.4th 822, 830 [30 Cal.Rptr.2d 777] (*Moeller*); see also 4 Miller & Starr, *supra*, § 10:199, p. 623.) The sale and any postponement are governed by section 2924g. (*Moeller, supra*, 25 Cal.App.4th at p. 830; 4 Miller & Starr, *supra*, § 10:201, p. 637.)

The trustee in nonjudicial foreclosure is not a true trustee with fiduciary duties, but rather a common agent for the trustor and beneficiary. (*Vournas, supra*, 73 Cal.App.4th at p. 677.) The scope and nature of the trustee's duties are exclusively defined by the deed of trust and the governing statutes. No other common law duties exist. (*I. E. Associates v. Safeco Title Ins. Co.* (1985) 39 Cal.3d 281, 287–288 [216 Cal.Rptr. 438, 702 P.2d 596] (*I. E. Associates*); *Residential Capital v. Cal-Western Reconveyance Corp.* (2003) 108 Cal.App.4th 807, 827 [134 Cal.Rptr.2d 162].)

### b. *The 1996 Amendment—Privilege Protection*

In 1996, section 2924 was amended to add the following language: "The mailing, publication, and delivery of notices as required herein, and the performance of the procedures set forth in this article, shall constitute privileged communications within Section 47." (Stats. 1996, ch. 483, § 1, p. 2864.) This provision—which we refer to as the 1996 amendment—was later incorporated into subdivision (d) of section 2924, with somewhat different language, but without relevant substantive change. (Stats. 2006, ch. 575, § 4.)[9] The original language of the 1996 amendment governs here.

 Although the 1996 amendment deems statutory nonjudicial foreclosure procedures to be privileged communications under section 47, the amendment fails to specify whether the intended privilege is absolute or qualified. (See 1 Bernhardt, Cal. Mortgage and Deed of Trust Practice, *supra*, § 2:31, p. 81.) As here relevant, section 47 provides an absolute privilege for communications made in a "judicial proceeding" (§ 47, subd. (b)(2)), generally referred to as the litigation privilege.[10] It also provides an absolute

---

[9] Current subdivision (d) of section 2924, incorporated into the statute in 2006, provides: "All of the following shall constitute privileged communications pursuant to Section 47:

"(1) The mailing, publication, and delivery of notices as required by this section.

"(2) Performance of the procedures set forth in this article.

"(3) Performance of the functions and procedures set forth in this article if those functions and procedures are necessary to carry out the duties described in Sections 729.040, 729.050, and 729.080 of the Code of Civil Procedure."

[10] Although section 47 has been amended three times since 1996, the language applicable to the instant case has remained the same. (Stats. 1996, ch. 1055, § 2, p. 6641; Stats. 2002, ch. 1029, § 1; Stats. 2004, ch. 182, § 4.) The relevant language states: "A privileged publication or broadcast is one made: [¶] (a) In the proper discharge of an official duty. [¶]

privilege for communications made "in any other official proceeding authorized by law." (§ 47, subd. (b)(3).) By contrast, it provides a qualified privilege for communications made "without malice, to a person interested therein, . . . by one who is also interested" (§ 47, subd. (c)(1)), the so-called common interest privilege. For this purpose, malice is defined as actual malice, meaning " 'that the publication was motivated by hatred or ill will towards the plaintiff *or* by a showing that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights.' " (*Sanborn v. Chronicle Pub. Co.* (1976) 18 Cal.3d 406, 413 [134 Cal.Rptr. 402, 556 P.2d 764] (*Sanborn*); see *Noel v. River Hills Wilsons, Inc.* (2003) 113 Cal.App.4th 1363, 1370 [7 Cal.Rptr.3d 216] (*Noel*).) Although the section 47 privileges were originally applicable only to defamation actions, case law now recognizes that the privileges apply to all torts except malicious prosecution. (See *Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1057 [39 Cal.Rptr.3d 516, 128 P.3d 713] (*Rusheen*).)

### c. *The* Garretson *Decision*

The failure of section 2924 to specify which section 47 privilege applies creates an ambiguity in the statute. The only prior decision to have construed the provision is *Garretson, supra,* 156 Cal.App.4th 1508. There, a trustor under a deed of trust (the purchaser of the property at issue) sued the beneficiary (the seller) for wrongful foreclosure. (*Id.* at p. 1514.) The beneficiary filed a motion to strike under Code of Civil Procedure section 425.16, the anti-SLAPP (strategic lawsuit against public participation) statute, contending that the wrongful foreclosure claim was barred because the notice of nonjudicial foreclosure sale constituted protected speech or petitioning activity in an "official proceeding authorized by law." (Code Civ. Proc., § 425.16, subd. (e)(1), (2).) As summarized by the Court of Appeal, the essence of the beneficiary's argument was that "because nonjudicial foreclosure proceedings are privileged under Civil Code sections 47 and 2924, . . . nonjudicial foreclosure proceedings are 'official proceedings' under the anti-SLAPP statute." (*Garretson, supra,* 156 Cal.App.4th at p. 1517.)

(b) *In any* (1) legislative proceeding, (2) *judicial proceeding,* (3) *in any other official proceeding authorized by law,* or (4) in the initiation or course of any other proceeding authorized by law and reviewable pursuant to Chapter 2 (commencing with Section 1084) of Title 1 of Part 3 of the Code of Civil Procedure, except as follows: [listing exceptions not applicable here]. [¶] (c) *In a communication, without malice, to a person interested therein, (1) by one who is also interested,* or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information." (Italics added.)

The court rejected the argument, noting that nonjudicial foreclosure is a private procedure without a close link "to any governmental, administrative, or judicial proceedings or regulation." (*Garretson, supra*, 156 Cal.App.4th at p. 1521.) In the course of its discussion, the court stated, without analysis, that "section 2924, subdivision (d) provides that a creditor's nonjudicial foreclosure activity constitutes privileged communications *under the litigation privilege* [of section 47, subdivision (b)]." (*Id.* at p. 1517, italics added.) The court apparently relied on a portion of the legislative history of the 1996 amendment—analyses of the Assembly Committee on Judiciary and the Senate Rules Committee—that equated the purpose of notices of default and sale in nonjudicial foreclosure to those in judicial foreclosure, and suggested the need to give the same privilege protection to trustees in both foreclosure procedures.[11]

As we next explain, to the extent *Garretson* concluded that the 1996 amendment makes the litigation privilege applicable to nonjudicial foreclosure, we disagree, because the legislative history is not at all clear.

### d. *The Inconclusive Legislative History*

The legislative history of the 1996 amendment, viewed as a whole, is far from definitive as to the scope of the privilege intended. (See *J.A. Jones Construction Co. v. Superior Court* (1994) 27 Cal.App.4th 1568, 1578 [33 Cal.Rptr.2d 206] (*J.A. Jones*) ["the wisest course is to rely on legislative history only when that history itself is unambiguous"].) True, the Assembly and Senate analyses cited by *Garretson* suggest a legislative intent to give the absolute protection of the litigation privilege to nonjudicial foreclosure. Indeed, the Assembly Judiciary Committee Republican Analysis (not cited in *Garretson*) expressly stated that the amendment would "extend[] that same

---

[11] The court referred to these document, as follows: "The Legislature's rationale for extending the litigation privilege in Civil Code section 2924 to nonjudicial foreclosures was to protect trustees in the performance of their contractual and statutory duties. The proponents of the original amendment to Civil Code section 2924 in 1996 commented that 'Trustees who record and send notices of default and of sale can be vulnerable to defamation suits despite the fact that when the same allegations are made in the context of a judicial foreclosure, they are clearly privileged communications. This appears to be because a nonjudicial foreclosure is a private, contractual proceeding, rather than an official, governmental proceeding or action. Essentially, the required communications of default are the same and made for the same purpose.' (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 1488 (1995–1996 Reg. Sess.) as amended June 26, 1996, p. 2, italics added; see also Sen. Rules Com., Off. of Sen. Floor Analysis, Unfinished Business, Analysis of Sen. Bill No. 1488 (1995–1996 Reg. Sess.) as amended July 9, 1996, p. 3.)" (*Garretson, supra*, 156 Cal.App.4th at p. 1518, italics omitted.)

privilege from such defamation liability [applicable to judicial foreclosure] to nonjudicial foreclosure proceedings." (Assem. Com. on Judiciary, Republican Analysis, Sen. Bill No. 1488 (1995–1996 Reg. Sess.) p. 3.)

Yet, other documents in the legislative history show a different intent. The California Trustees Association sponsored the 1996 amendment to protect trustees from the harassment caused by defamation actions based on the publication of notices of default and of sale required by statute. Responding to two background information requests (one from the Assembly Committee on Judiciary, the other from the Senate counterpart), the Senate author stated that the proposed amendment "clarifies" that a trustee's actions under the nonjudicial foreclosure statutes "are 'communications' within the meaning of Civil Code Section 47, meaning that *truthful communications made without malice are privileged from libel laws.*" (Assem. Com. on Judiciary, Background Information Request, Sen. Bill No. 1488 (1995–1996 Reg. Sess.) p. 3, italics added; Sen. Com. on Judiciary, Background Information Request, Sen. Bill No. 1488 (1995–1996 Reg. Sess.) p. 2, italics added.)[12] The reference to granting protection to "truthful communications made without malice" invokes the qualified privilege language of section 47, subdivision (c), and thus contradicts the notion that the amendment was intended to make the litigation privilege applicable.

The Legislative Counsel's Digest accompanying the final version of the bill is ambiguous concerning the scope of the privilege. It states: "Existing law defines a privileged publication or broadcast for the purposes of the law relating to defamation. [¶] The bill would provide that the mailing, publication, and delivery of notices and the performance of specified procedures are privileged communications for the purposes of the law relating to defamation." (Legis. Counsel's Dig., Sen. Bill No. 1488 (1995–1996 Reg. Sess.) p. 1.) The digest does not state whether the "privileged communications" are absolutely or qualifiedly privileged. No other document properly considered in an analysis of the legislative history adds anything definitive to the debate.

Thus, contrary to the apparent conclusion of the *Garretson* court, the legislative history of the 1996 amendment does not give a clear picture of legislative intent. That history alone, therefore, is not a reliable indicator of the scope of the privilege protection intended by the 1996 amendment. (*J.A. Jones, supra,* 27 Cal.App.4th at p. 1578.)

### e. *The 1996 Amendment Reasonably Construed*

■ Because neither the language nor the legislative history of the 1996 amendment reveal a clear meaning, we "apply reason, practicality, and

---

[12] Background information requests are a proper source of legislative history. (*Armijo v. Miles* (2005) 127 Cal.App.4th 1405, 1415, fn. 5 [26 Cal.Rptr.3d 623].)

common sense to the language at hand," seeking to make the 1996 amendment "workable and reasonable [citations] . . . , in accord with common sense and justice, and to avoid an absurd result." (*Halbert's Lumber, Inc. v. Lucky Stores, Inc.* (1992) 6 Cal.App.4th 1233, 1239 [8 Cal.Rptr.2d 298] (*Halbert's Lumber*).) Logic and the purposes of the statutory scheme suggest that the common interest privilege (§ 47, subd. (c)(1)), not the absolute privileges for communications in judicial or official proceedings (§ 47, subd. (b)(2), (3)), applies to nonjudicial foreclosure.

■ As noted, the common interest privilege applies to "a communication, without malice, to a person interested therein . . . by one who is also interested." (§ 47, subd. (c).) This privilege is a natural fit for nonjudicial foreclosure. The trustee's statutory duties in effectuating the foreclosure are designed, in major part, to communicate relevant information about the foreclosure to other interested persons. The statutory notice of default is intended to give notice of the trustor's default to "the trustor, the trustor's successors, to junior lienors, other interested persons, and . . . to the world." (4 Miller & Starr, *supra*, § 10:181, p. 553.) Similarly, the notice of sale is intended to communicate necessary information concerning the impending sale to the same persons. (See generally 4 Miller & Starr, *supra*, § 10:199, pp. 623–629; see also 1 Bernhardt, Cal. Mortgage and Deed of Trust Practice, *supra*, § 2.31, p. 81.) Thus, the trustee's statutory duties in nonjudicial foreclosure are consistent with the type of communications from one interested party to another covered by the common interest privilege.

■ By contrast, nonjudicial foreclosure bears none of the attributes essential for absolute privilege. Though regulated by statute as a matter of public policy, nonjudicial foreclosure is a private procedure involving private parties, occurring pursuant to a private power of sale contained in a deed of trust. (See generally 4 Miller & Starr, *supra*, §§ 10:179 to 10:180, pp. 547–551.) By definition, it does not occur in a judicial proceeding. Hence, on its face, it is not covered by the litigation privilege. It also does not occur in an "official proceeding authorized by law" (§ 47, subd. (b)(3)), a category generally reserved for " 'official,' i.e. governmental proceedings: that is, proceedings involving the government, an agency or official thereof, or quasi-judicial proceedings otherwise reviewable by writ of mandate." (*Eisenberg v. Alameda Newspapers, Inc.* (1999) 74 Cal.App.4th 1359, 1377 [88 Cal.Rptr.2d 802]; see also *Garretson, supra,* 156 Cal.App.4th at pp. 1520–1521 [nonjudicial foreclosure is not an "official proceeding" within the meaning of Code Civ. Proc., § 425.16, subd. (e)(1) and (2)].)

■ Besides the logic of applying the common interest privilege rather than the litigation or official proceeding privilege, it is apparent that granting absolute immunity would be inconsistent with the "carefully crafted balancing of the interests of beneficiaries, trustors, and trustees" reflected in the comprehensive statutory scheme governing nonjudicial foreclosure. (*I. E. Associates, supra,* 39 Cal.3d at p. 288; see also *Moeller, supra,* 25 Cal.App.4th at p. 830.) In nonjudicial foreclosure, "[b]eneficiaries . . . want quick and inexpensive recovery of amounts due under promissory notes in default. Trustors . . . need protection against the forfeiture of valuable property rights. Trustees . . . need to have clearly defined responsibilities to enable them to discharge their duties efficiently and to avoid embroiling the parties in time-consuming and costly litigation. In taking all of these concerns into account, the statutes strike an overall balance favoring the protection of trustors." (*I. E. Associates, supra,* 39 Cal.3d at p. 288.)

■ Obviously, the 1996 amendment was intended to give trustees some measure of protection from tort liability arising out of the performance of their statutory duties. The overall balance of interests reflected in the statutory scheme, however, favors protection of trustors' property rights, thus suggesting that trustors should not be entirely deprived of the ability to vindicate their property rights if wrongfully violated by the trustee. Granting absolute immunity from such wrongdoing would wholly sacrifice the trustor's interest in favor of the trustee. The qualified common interest privilege, on the other hand, would provide a significant level of protection to trustees, leaving them open to liability only if they act with malice. At the same time, it preserves the ability of trustors to protect against the wrongful loss of property caused by a trustee's malicious acts.

Moreover, the plain language of the 1996 amendment grants privilege protection not only to trustees, but also to beneficiaries insofar as they may act as trustees. Section 2924 (at the time of the 1996 amendment and now) expressly permits the *beneficiary,* as well as the trustee, to record the notice of default which commences the nonjudicial foreclosure process. (See § 2924, subd. (a)(1).) Indeed, the beneficiary may act as trustee and enforce the trustee's authority under a deed of trust, including the power of sale (although this is uncommon). (1 Bernhardt, Cal. Mortgage and Deed of Trust Practice, *supra,* § 1:40, p. 32; 4 Miller & Starr, *supra,* § 10:3, p. 20.) Thus, the plain meaning of the 1996 amendment makes the recording of the notice of default by the beneficiary, and any other statutorily authorized act of the beneficiary acting as trustee, a privileged communication under section 47. It is difficult to believe that the Legislature intended to immunize the beneficiary (the

creditor under the deed of trust) from even a *malicious* initiation of nonjudicial foreclosure that might wrongfully deprive the trustor of the property that secures the debt.[13]

 Thus, the common interest privilege is more consistent with the purposes of the nonjudicial foreclosure statutes as a whole than the absolute immunity conferred by the litigation privilege of section 47, subdivision (b)(2), or the official proceeding privilege of section 47, subdivision (b)(3). Further, as we have noted, the common interest privilege, unlike the litigation or official proceeding privilege, is consistent with the nonjudicial foreclosure process. Construing the 1996 amendment in a commonsense fashion in light of the statutory scheme as a whole, we conclude that the protection granted to nonjudicial foreclosure by the 1996 amendment is the qualified common interest privilege of section 47, subdivision (c)(1).

### f. *The 1999 Amendment—Good Faith Exception to Liability*

In 1999, the following provision was added to section 2924: "In performing acts required by this article, the trustee shall incur no liability for any good faith error resulting from reliance on information provided in good faith by the beneficiary regarding the nature and the amount of the default under the secured obligation, deed [of] trust, or mortgage." (Stats. 1999, ch. 974, § 8.) This provision, to which we refer as the 1999 amendment, was also sponsored by the California Trustee's Association, and was in effect at the time of the foreclosure in this case in 2003.[14]

---

[13] We recognize that the legislative history suggests that the 1996 amendment (which, as we have noted, was sponsored by the California Trustees Association) was designed to protect *trustees* against harassing lawsuits. The legislative history makes no mention of a need to protect *beneficiaries*. Nonetheless, although the language of the amendment is ambiguous as to whether absolute or qualified immunity was intended, it is unambiguous as to what conduct is deemed a privileged communication—"[t]he mailing, publication, and delivery of notices as required herein, and the performance of the procedures set forth in this article, shall constitute privileged communications." (Stats. 1996, ch. 483, § 1, p. 2864.) By its plain language, therefore, the amendment extends privilege protection to beneficiaries when they act as trustees and record the notice of default, as section 2924 authorizes them to do. (See *Halbert's Lumber, supra,* 6 Cal.App.4th at p. 1239.) Moreover, we are unable to conclude that providing qualified immunity to beneficiaries who act as trustees results in an absurdity. (*Unzueta v. Ocean View School Dist.* (1992) 6 Cal.App.4th 1689, 1698 [8 Cal.Rptr.2d 614] [disregarding statutory language to avoid absurd result is reserved only for "extreme cases"].)

[14] The 1999 amendment was placed in section 2924 two sentences before the 1996 amendment. Thus, at the time of the instant case, former section 2924 provided: *"In performing acts required by this article [§§ 2920–2944.5], the trustee shall incur no liability for any good faith error resulting from reliance on information provided in good faith by the beneficiary regarding the nature and the amount of the default under the secured obligation, deed of trust, or mortgage.* In performing the acts required by this article, a trustee shall not be subject to Title 1.6c (commencing with Section 1788) of Part A recital in the deed executed pursuant to the power of sale of compliance with all requirements of law regarding the mailing

The Markowitzes contend that the 1999 amendment limits the effect of the privilege created by the 1996 amendment. They assert that the 1999 amendment must be understood to mean that trustees remain subject to liability where good faith is lacking either on the part of the trustee or the *beneficiary*. Thus, under their interpretation, if the Kachlons acted in bad faith in conveying information about the default to Best Alliance, Best Alliance is not entitled to privilege protection, regardless of whether Best Alliance acted in good faith.

■ On the face of the 1999 amendment, it is not entirely clear how it interplays with the 1996 amendment, if at all. Certainly, the placement of the two provisions in the statute, separated by two sentences at the time of this case (and under current law, in two separate subdivisions with one subdivision intervening), does not suggest an interrelationship. More importantly, the legislative history of the 1999 amendment definitively shows (see *J.A. Jones, supra*, 27 Cal.App.4th at p. 1578) that it was intended as an *expansion* of the immunity already granted to trustees in a different statute, section 2924f. That statute grants immunity to trustees for any good faith error in stating the proper amount of the unpaid balance in the notice of sale.[15] Nothing in the legislative history of the 1999 amendment suggests that it was intended as a limitation on the privilege protection of the 1996 amendment of section 2924.[16] We decline to construe the 1999 amendment in a manner inconsistent with the unambiguous legislative intent evidenced by the legislative history.

---

of copies of notices or the publication of a copy of the notice of default or the personal delivery of the copy of the notice of default or the posting of copies of the notice of sale or the publication of a copy thereof shall constitute prima facie evidence of compliance with these requirements and conclusive evidence thereof in favor of bona fide purchasers and encumbrancers for value and without notice. *The mailing, publication, and delivery of notices as required herein, and the performance of the procedures set forth in this article, shall constitute privileged communications within Section 47.*" (Stats. 2000, ch. 636, § 6, italics added; see also Stats. 1999, ch. 974, § 8.)

The 1999 amendment is now found in section 2924, subdivision (b).

[15] The second paragraph of section 2924f, subdivision (b)(1) states: "The notice of sale shall contain a statement of the total amount of the unpaid balance of the obligation secured by the property to be sold and reasonably estimated costs, expenses, advances at the time of the initial publication of the notice of sale, and, if republished pursuant to a cancellation of a cash equivalent pursuant to subdivision (d) of Section 2924h, a reference of that fact; *provided, that the trustee shall incur no liability for any good faith error in stating the proper amount, including any amount provided in good faith by or on behalf of the beneficiary.* An inaccurate statement of this amount shall not affect the validity of any sale to a bona fide purchaser for value." (Italics added.) It so stated at the time of the amendment.

[16] A representative sample from the legislative history proves the point. The Floor Analysis of the Senate Committee on Judiciary stated: "Existing law provides a trustee with limited immunity for any good faith error in stating in the notice of sale the amount of the unpaid balance of the obligation secured by the property to be sold and reasonably estimated costs, expenses and advances, including any amount provided in good faith by or on behalf of the beneficiary. An inaccurate statement of this amount shall not affect the validity of the sale to a bona fide purchaser for value. (Section 2924f.) [¶] *This bill would expand the trustee's*

Thus, whatever else the 1999 amendment might mean, it does not affect the privilege protection provided by the 1996 amendment to Best Alliance's recording of the notice of default.

### g. *Best Alliance's Privilege Protection*

Having concluded that section 2924 makes the common interest privilege (§ 47, subd. (c)(1)) applicable to statutory, nonjudicial foreclosure procedures, we now determine whether the trial court, based on that privilege, properly granted a directed verdict for Best Alliance on the Markowitzes' slander of title claim, and properly entered judgment notwithstanding the verdict for Best Alliance on the negligence claim.

As we have noted, Best Alliance's liability on the Markowitzes' slander of title and negligence claims depends upon its supposedly wrongful acts of recording the notice of default without adequate investigation and failing to rescind the notice upon being shown that the original $53,000 promissory note had been satisfied. Certainly Best Alliance's recording the notice of default—a notice required by section 2924—was a privileged communication, and Best Alliance's failing to rescind it is no less privileged, flowing as it does from the statutorily protected act of the recording.[17] Thus, unless Best Alliance acted with malice, it is immune from liability under the common interest privilege.

As a matter of law, the evidence failed to show that Best Alliance acted with malice. After the Kachlons substituted Best Alliance as trustee and

---

*immunity to cover any good faith error resulting from reliance on information provided in good faith by the beneficiary regarding the nature and the amount of the default under the secured obligation, deed of trust, or mortgage, regarding all acts performed under this article including the notice of default and sale.*" (Sen. Com. on Judiciary, Off. of Sen. Floor Analyses, Assem. Bill No. 431 (1999–2000 Reg. Sess.) as amended June 24, 1999, p. 2, italics added, original underscoring.) Similar comments can be found in other analyses of the Department of Financial Institutions and the Assembly Committee on Judiciary. (See Dept. of Fin. Institutions, Enrolled Bill Rep. on Assem. Bill No. 431 (1999–2000 Reg. Sess.) as amended Aug. 31, 1999, p. 2; Assem. Com. on Judiciary, Analysis of Assem. Bill No. 431 (1999–2000 Reg. Sess.) as amended Apr. 20, 1999, p. 3.)

[17] We recognize that there are circumstances under which a trustee is statutorily required to cause a notice of rescission to be recorded. (See § 2924c, subd. (a)(2) [if trustor cures default, beneficiary shall deliver to trustee a notice of rescission of the declaration of default and demand for sale, and trustee shall cause notice of rescission to be recorded].) However, those conditions did not occur here with regard to Best Alliance, and we express no opinion regarding to what extent a trustee might be liable under such circumstances for failure to record a notice of rescission.

completed a declaration of default, Best Alliance obtained a trustee's sale guaranty that indicated the deed of trust was still of record. Best Alliance then recorded a notice of default. When notified by Donald's counsel that there was a dispute over whether the debt had been satisfied, Best Alliance refused to take any further action, either to proceed with the foreclosure sale or to rescind the notice of default.

 The Markowitzes assert that by failing to obtain the original note and deed of trust, Best Alliance acted with reckless disregard as to whether the notice of default was warranted. We disagree. "[M]ere negligence in making 'a sufficient inquiry into the facts on which the statement was based' does [not], of itself, relinquish the privilege. 'Mere inadvertence or forgetfulness, or careless blundering, is no evidence of malice.' [Citation.] [¶] While '[the] concept of negligence is inherent in the issue of probable cause' [citation], the decisions long ago recognized that to constitute malice the negligence must be such as 'evidenced a wanton and reckless disregard of the consequences and of the rights and of the feelings of others' [citation]." (*Roemer v. Retail Credit Co.* (1970) 3 Cal.App.3d 368, 371 [83 Cal.Rptr. 540]; see *Noel, supra*, 113 Cal.App.4th at pp. 1370–1371.)

Best Alliance's omissions were, at worst, negligent. No evidence suggested that it acted with ill will or with reckless disregard for the truth of the notice of default. Before recording the notice of default, it obtained a trustee's sale guaranty indicating that the deed of trust was still of record, and that no prior reconveyance had been recorded. After being presented with documentation showing that the underlying debt had been paid, Best Alliance took no further action to enforce the foreclosure. Nothing remotely suggests that Best Alliance acted with malice. Thus, the trial court properly concluded that Best Alliance's conduct constituted privileged communications, and properly relieved it of liability for the Markowitzes' slander of title and negligence claims.

## 2. Denial of Judgment Notwithstanding the Verdict for the Kachlons

Best Alliance is not the only party who sought privilege protection in the trial court. The Kachlons also filed a motion for judgment notwithstanding the verdict, contending that their conduct was privileged under sections 2924 and 47. The trial court denied the motion. On appeal, the Kachlons contend that the court erred. We disagree.

First, as we have noted, the 1996 amendment is designed to protect beneficiaries when they also act as trustees in the enforcement of the power

of sale in the deed of trust. The Kachlons, however, did not act as trustees. Moreover, the 1996 amendment gives protection to "[t]he mailing, publication, and delivery of notices *as required herein*, and the performance of the procedures *set forth in this article*." (Stats. 1996, ch. 483, § 1, p. 2864, italics added.) The Kachlons fail to explain how their conduct in bringing about the nonjudicial foreclosure—presenting to Best Alliance written instructions, a declaration of default, and a demand for sale—may be construed as notices required by statute or as the procedures set forth in the statutory scheme.

Further, even if we were to read section 2924 more broadly to include within the scope of the privilege the actions taken by the Kachlons, we would conclude, at least as to Mordechai, that he was not entitled to privilege protection. The jury concluded that the nonjudicial foreclosures instituted by the Kachlons were wrongful, and that in pursuing the foreclosure proceedings Mordechai acted "intentionally, fraudulently and in conscious and callous disregard for the rights of the Markowitzes." These findings are tantamount to the finding of malice required to defeat a qualified privilege—reckless disregard for the Markowitzes' rights. (*Sanborn, supra*, 18 Cal.3d at p. 413.)

### 3. *The Kachlons and Best Alliance's Challenges to Liability for Attorney Fees Under Civil Code Section 1717*

#### a. *Factual and Procedural Background and Contentions on Appeal*

Another area of dispute is the trial court's award of attorney fees to the Markowitzes under section 1717 as prevailing parties against the Kachlons and Best Alliance.

As we have noted, the Markowitzes alleged three equitable claims against the Kachlons and Best Alliance: (1) declaratory relief to cancel the promissory note and reconvey the deed of trust; (2) injunctive relief to preclude the foreclosure proceedings; and (3) quiet title to the property. After the jury verdict on the parties' legal claims, the trial court resolved the equitable claims, and granted the Markowitzes the equitable relief they sought against the Kachlons and Best Alliance: rescission of the foreclosure, reconveyance of the deed of trust, an injunction precluding a foreclosure sale, and quiet title in the Markowitzes' favor.

The Markowitzes, who were represented by separate attorneys, filed motions for their respective attorney fees. The motions asserted two legal bases for an award of attorney fees, only one of which is relevant in this portion of our opinion. The first basis—the one we discuss here—was that the Markowitzes were entitled to attorney fees as prevailing parties under the attorney fee clause in the deed of trust and section 1717. This ground for an

attorney fee award is based on the results of the court's determination of the Markowitzes equitable claims in the wrongful foreclosure action.[18] The trial court found the Markowitzes were entitled to attorney fees as prevailing parties, and made the Kachlons and Best Alliance jointly and severally liable for the awards. The Kachlons and Best Alliance now challenge this ruling, albeit on different grounds.

According to the Kachlons, section 1717 does not apply, because the Markowitzes' claims for declaratory and injunctive relief and quiet title were not based on contract. Best Alliance contends that it was not liable for attorney fees under section 1717, for essentially two reasons: (1) the Markowitzes were not prevailing parties on those claims as against Best Alliance, and (2) in any event, Best Alliance, as a trustee in nonjudicial foreclosure, is immune from attorney fees.

We conclude, in the final published portion of our opinion, that the trial court properly found the Markowitzes entitled to attorney fees under section 1717 as prevailing parties on their equitable claims against the Kachlons and Best Alliance.

### b. *Claims Based on the Note and Deed of Trust*

The Kachlons contend that section 1717 does not apply, because the Markowitzes claims for declaratory and injunctive relief and quiet title were equitable in nature, and not arising out of contract. Established law is to the contrary.

"[W]here a contract provides that only one party may obtain attorney's fees in litigation, [section 1717] makes the right to such fees reciprocal, such that the 'party prevailing on the contract' claim will be entitled to recovery of fees ' "whether he or she is the party specified in the contract or not." ' [Citations.]" (*Pacific Custom Pools, Inc. v. Turner Construction Co.* (2000) 79 Cal.App.4th 1254, 1268 [94 Cal.Rptr.2d 756].)[19]

---

[18] The second basis on which the Markowitzes sought attorney fees was Business and Professions Code section 7168, which provides for an award of reasonable attorney fees for the prevailing party "[i]n any action between a person contracting for construction of a swimming pool and a swimming pool contractor arising out of a contract for swimming pool construction." Because this ground for attorney fees is based on the results of the jury trial on Mordechai Kachlon's suit for breach of his contract for construction of home improvements, we discuss it in part II of our opinion, below.

[19] Section 1717 states in relevant part: "(a) In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs.

In the instant case, the relevant attorney fee clauses are found, first, in the promissory note signed by the Markowitzes, which provided: "If action be instituted on this note I [the Markowitzes] promise to pay such sum as the Court may fix as attorney's fees." The second is in the deed of trust, as follows: "To Protect the Security of This Deed of Trust, Trustor [the Markowitzes] Agrees: [¶] . . . [¶] 3. To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; and to pay all costs and expenses, including cost of evidence of title *and attorney's fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear*, and in any suit brought by Beneficiary to foreclose this Deed." (Italics added.)

Under these two unilateral clauses, the Markowitzes agreed to pay attorney fees in any action instituted on the promissory note, and in any action affecting the security of the deed of trust or the rights or powers of the Kachlons (the beneficiaries under the deed of trust) or Best Alliance (the trustee).[20] Section 1717 makes these unilateral attorney fee clauses reciprocal, and entitles the Markowitzes to attorney fees if they prevailed in an action on the note or deed of trust. (See *Huckell v. Matranga* (1979) 99 Cal.App.3d 471, 482 [160 Cal.Rptr. 177] [in quiet title action arising out of nonjudicial foreclosure proceedings, finding applicable § 1717 based on identical language in note].)

In determining whether an action is "on the contract" under section 1717, the proper focus is not on the nature of the remedy, but on the basis of the cause of action. (See *Baugh v. Garl* (2006) 137 Cal.App.4th 737, 742 [40 Cal.Rptr.3d 539].) Here, although the remedy sought in the relevant causes of action was equitable, the claims were still actions "on the contract," i.e., the note and deed of trust.

In the declaratory relief claim, the Markowitzes sought a declaration that the promissory note must be cancelled because it had been paid in full, and

---

[¶] . . . [¶] (b)(1) The court, upon notice and motion by a party, shall determine who is the party prevailing on the contract for purposes of this section . . . . [T]he party prevailing on the contract shall be the party who recovered a greater relief in the action on the contract. The court may also determine that there is no party prevailing on the contract for purposes of this section." (§ 1717.)

[20] The Kachlons parse the language in the deed of trust to argue that the attorney fee provision constituted an indemnity agreement to which section 1717 does not apply, and that this was not a suit brought by them as beneficiaries to foreclose this deed. We need not belabor the point, because we agree with the analysis of *Valley Bible Center v. Western Title Ins. Co.* (1983) 138 Cal.App.3d 931, 932–933 [188 Cal.Rptr. 335], which held that nearly identical language in a deed of trust entitled the trustor to attorney fees after prevailing against the trustee and beneficiary in an action to block a trustee's sale. Moreover, even if the clause in the deed of trust did not entitle the Markowitzes to attorney fees, the broad language of the attorney fee clause in the promissory note certainly does.

that the deed of trust must be reconveyed because the foreclosure violated the terms of the deed of trust. "Actions for a declaration of rights based upon an agreement are 'on the contract' within the meaning of Civil Code section 1717." (*Texas Commerce Bank v. Garamendi* (1994) 28 Cal.App.4th 1234, 1246 [34 Cal.Rptr.2d 155].)

■ Similarly, the claim for injunctive relief was founded on contract. "Actions seeking injunctive relief are, of course, equitable in nature. Although most arise out of torts . . . , injunctions are occasionally granted in contract actions." (3 Witkin, Cal. Procedure (5th ed. 2008) Actions, § 126, p. 205.) Here, the basis of the Markowitzes' claim for an injunction was, in part, contractual in nature: namely, that foreclosure violated the terms of the trust deed. The quiet title claim, too, sought to enforce the terms of the deed of trust requiring a reconveyance of title upon satisfaction of the underlying debt.

Finally, although we have found no case holding that actions seeking to enjoin nonjudicial foreclosure and clear title based on the provisions of a deed of trust are actions on a contract, several have assumed under such circumstances that an award of attorney fees under section 1717 and provisions in the deed of trust is proper. (See, e.g., *Star Pacific Investments, Inc. v. Oro Hills Ranch, Inc.* (1981) 121 Cal.App.3d 447, 463 [176 Cal.Rptr. 546]; *Valley Bible Center v. Western Title Ins. Co., supra*, 138 Cal.App.3d at pp. 932–933 [trustor prevailing in action to enjoin trustee's sale of property entitled to award of attorney fees against trustor]; *Wilhite v. Callihan* (1982) 135 Cal.App.3d 295 [185 Cal.Rptr. 215] [attorney fees awarded to grantee of deed of trust with due-on-sale clause on theory trustee and beneficiary would be entitled to collect attorney fees from grantee as part of debt secured by deed of trust had grantee been unsuccessful in enjoining foreclosure proceedings]; *Saucedo v. Mercury Sav. & Loan Assn.* (1980) 111 Cal.App.3d 309 [168 Cal.Rptr. 552] [same]; *Huckell v. Matranga, supra*, 99 Cal.App.3d 471 [trustor entitled to seek attorney fees arising out of quiet title action].)

Thus, the causes of action here, for declaratory and injunctive relief and to quiet title, are "action[s] on a contract" within the meaning of section 1717, subdivision (a). Therefore, section 1717 permitted the trial court to award attorney fees to "the party who is determined to be the party prevailing on the contract." (§ 1717, subd. (a).) Without question, the Markowitzes prevailed against the Kachlons on these claims, thus entitling them to an award of attorney fees from the Kachlons.

### c. *Determination of Prevailing Party As Against Best Alliance*

Best Alliance first challenges the attorney fee award on the ground that the Markowitzes were not prevailing parties against Best Alliance on the equitable claims founded on the note and deed of trust. According to Best Alliance, it remained neutral throughout the litigation, and its only litigation objective, which it fully achieved through directed verdict and judgment notwithstanding the verdict, was to defend claims against it seeking tort damages. We find no abuse of discretion in the trial court's determination that the Markowitzes were entitled to attorney fees from Best Alliance as prevailing parties.

Following the trial court's granting of the Markowitzes' motions for attorney fees, the court, as we have discussed, granted judgment notwithstanding the verdict for Best Alliance on the Markowitzes' negligence claim. The court had already granted a directed verdict for Best Alliance on the Markowitzes' slander of title claim. The court issued an amended judgment deleting the award of damages against Best Alliance on the negligence claim. However, the amended judgment still made Best Alliance jointly and severally liable with the Kachlons for the Markowitzes' attorney fees on their equitable claims.

Best Alliance then filed a "declaration of nonmonetary status" under section 2924*l*, which provides a limited procedure by which a trustee under a deed of trust may avoid participation in litigation and liability for damages, costs, and attorney fees. Best Alliance also filed a motion to vacate the judgment, arguing that because it was immune from tort liability under section 2924, the Markowitzes were not prevailing parties under section 1717 and Best Alliance was not liable for their attorney fees. The court denied the motion to vacate, leaving the attorney fee award in place. The court's ruling was sound.

Under section 1717, " 'the court is given wide discretion in determining which party has prevailed on its cause(s) of action. Such a determination will not be disturbed on appeal absent a clear abuse of discretion.' " (*Smith v. Krueger* (1983) 150 Cal.App.3d 752, 756–757 [198 Cal.Rptr. 174].) When, as in the present case, the contract under which attorney fees are to be awarded does not define "prevailing party," " 'a court may base its attorney fees decision on a pragmatic definition of the extent to which each party has realized its litigation objectives, whether by judgment, settlement, or otherwise. [Citation.]' " (*Jackson v. Homeowners Assn. Monte Vista Estates—East* (2001) 93 Cal.App.4th 773, 784 [113 Cal.Rptr.2d 363].)

Contrary to Best Alliance's contention, the record reasonably supports a pragmatic determination that Best Alliance did not merely defend against the

tort claims, but rather consistently allied itself with the Kachlons on the essential issues relevant to the claims on the note and deed of trust. In its answer to the Markowitzes' complaint, Best Alliance, then represented by different counsel than the Kachlons, denied that it caused a false notice of default to be recorded, denied that the notice of default was improper, denied that the promissory note had been paid in full, and denied that the deed of trust improperly remained of record. It further asserted that the Markowitzes were not entitled to injunctive relief or quiet title in their favor.

Later, Best Alliance joined in the Kachlons' opposition to Donald's motion for summary judgment. Still later, after substituting the Kachlons' counsel as its own, Best Alliance filed a joint trial brief with the Kachlons. As to the claims against Best Alliance, the trial brief declared that two essential allegations "will be hotly contested at the trial," namely, the allegation that the "$53,000 promissory note was paid in full and therefore Best Alliance improperly recorded a notice of default," and the allegation that "Best Alliance refused to stop the foreclosure even after being presented with a request for reconveyance stating that the promissory note had been paid in full." Best Alliance also asserted that even if the allegations against it were true, it intended to show at trial that it had no duty to investigate the status of the underlying debt before commencing foreclosure proceedings.

Only after the trial court's determination of the equitable claims did Best Alliance file, for the first time, a declaration of nonmonetary status pursuant to section 2924*l*.[21] In such a declaration, which can be filed at any time after a trustee is named as a defendant in an action, the trustee states its reasonable belief that it is named as a defendant in an action solely in its capacity as trustee and not due to its acts or omissions. The trustee may thereby avoid participation in the lawsuit unless another party objects, and also avoid liability for damages and attorney fees. (See fn. 5, *ante*; see also 4 Miller & Starr, *supra*, § 10:4, p. 28.) True, the Markowitzes likely would have objected to such a declaration, and therefore Best Alliance would still have been required to participate in the litigation. (§ 2924*l*, subd. (e).) But by filing such a declaration, at least prior to the trial court's bifurcated determination of the equitable claims based on the note and deed of trust, Best Alliance would have timely articulated the position that it considered itself merely a nominal defendant on those claims with no interest in the outcome. That Best Alliance failed to do so reinforces the conclusion that it was not neutral in the litigation and that its objectives were not limited to defending against the damage claims.

---

[21] In its answer, Best Alliance included a reference to section 2924*l* as an affirmative defense, but it did not file the required declaration.

At a hearing on the content of the final amended judgment, Best Alliance's counsel objected to the court's ruling that the Markowitzes were prevailing parties, arguing in part that on the equitable claims, "we weren't fighting." The court aptly responded: "Somebody was fighting in your name." The record supports the court's pragmatic conclusion, and does not show an abuse of discretion in the court's implicit determination that Best Alliance failed to obtain its litigation objectives on the equitable claims founded on the note and trust deed.

### d. *Privilege and Its Relationship to Attorney Fees*

Best Alliance also contends that because it was immune from tort liability based on privilege, it cannot be liable for attorney fees based on contract. But no such relationship between the privileges of section 47 and liability for attorney fees under section 1717 exists.

█ The section 47 privileges limit tort liability. (*Rusheen, supra*, 37 Cal.4th at p. 1057.) A motion for attorney fees is not analogous to a tort claim. Attorney fees, when authorized by statute or contract, are not awarded as damages, but rather as reimbursement for "allowable . . . costs" of litigation under Code of Civil Procedure section 1032. (Code Civ. Proc., § 1033.5, subd. (a)(10)(A), (B).) On similar reasoning, the court in *Washburn v. City of Berkeley* (1987) 195 Cal.App.3d 578, 586–587 [240 Cal.Rptr. 784], held that the availability of attorney fees pursuant to the private attorney general statute, Code of Civil Procedure section 1021.5, is not affected by section 47 privilege for communications in official proceedings. Likewise, the availability of attorney fees under the contractual clauses here is not affected by the common interest privilege of section 47.

█ Furthermore, nothing in the statutory scheme regulating nonjudicial foreclosure suggests a policy of immunizing trustees from liability for attorney fees. To the contrary, as we have noted, section 2924*l* provides a limited procedure by which a trustee may avoid attorney fee liability. The trustee must file a declaration of nonmonetary status stating that it reasonably believes it was named as a defendant solely in its capacity as trustee, and not for misconduct in its duties. If no party timely objects, "the trustee shall not be required to participate any further in the action or proceeding, [and] shall not be subject to any monetary awards as and for damages, *attorneys' fees* or costs." (2924*l*, subd. (d), italics added.) On the other hand, if a party does timely object, "the trustee shall thereafter be required to participate in the action or proceeding" (§ 2924*l*, subd. (e)), and by implication may be liable for attorney fees. Section 2924*l* was adopted in 1995 (Stats. 1995, ch. 752, p. 5597), the year before the 1996 amendment to section 2924 that incorporated the common interest privilege of section 47. In creating privilege

protection for trustees, the 1996 amendment did not purport to alter the procedure of section 2924*l* so as to immunize trustees from liability for attorney fees apart from that procedure. Thus, Best Alliance enjoyed no statutory immunity from attorney fees.

4.–6.[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## II. ISSUES REGARDING THE HOME IMPROVEMENT CONTRACT AND RELATED CLAIMS[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The portion of the judgment awarding Debra $16,000 in attorney fees for the wrongful foreclosure portion of the case under Civil Code section 1717 is reversed. The matter is remanded to the trial court with directions to recalculate the attorney fees to which Debra is entitled using the lodestar method as described in *PLCM, supra,* 22 Cal.4th at pages 1095–1096. In all other respects, the judgment is affirmed. Costs on appeal are awarded to Debra Markowitz and Donald Markowitz, and these costs are to be borne by Mordechai Kachlon and Monica Kachlon. Best Alliance shall bear its own costs on appeal.

■■ As between each of the Markowitzes, on the one hand, and the Kachlons, on the other, the Markowitzes are determined to be the prevailing parties on appeal. Donald and Debra are thus each entitled to an award of attorney fees on appeal. " '[F]ees, if recoverable at all—pursuant either to statute or parties' agreement—are available for services at trial *and on appeal.*' (Italics added.)" (*Morcos v. Board of Retirement* (1990) 51 Cal.3d 924, 927 [275 Cal.Rptr. 187, 800 P.2d 543], quoting *Serrano v. Unruh* (1982) 32 Cal.3d 621, 637 [186 Cal.Rptr. 754, 652 P.2d 985].) Although we could appraise and fix the amount of attorney fees to which Donald and Debra are entitled, we deem the more appropriate course of practice is to remand the case to the trial court to determine the appropriate amount of fees.

[*]See footnote, *ante,* page 316.

As between the Markowitzes and Best Alliance, we determine there to be no prevailing party for purposes of the appeal. These parties shall bear their own attorney fees on appeal relative to one another.

Epstein, P. J., and Suzukawa, J., concurred.