Filed 7/15/15  Torigian v. WT Capital Lender Services CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| ANDRE TORIGIAN et al.,<br><br>Plaintiffs and Respondents,<br><br>v.<br><br>WT CAPITAL LENDER SERVICES,<br><br>Defendant and Appellant. | F068393<br><br>(Super. Ct. No. 10CECG03800)<br><br>**ORDER MODIFYING OPINION AND DENYING REHEARING [NO CHANGE IN JUDGMENT]** |

**THE COURT:**

It is ordered that the opinion filed herein on June 24, 2015, be modified in the following particulars:

1.  On page 1, counsel listing for appellant, which reads "Adelson, Hess & Kelly," is corrected to read "Adleson, Hess & Kelly."

2.  The last sentence on page 23 and continuing on page 24 commencing "Thus, the attorney fees" is deleted and the following sentence is inserted in its place:

> Thus, the attorney fees incurred prior to the filing of the Torigians' objection to WT Capital's declaration of nonmonetary status were incurred during the pleading stage of the litigation and do not indicate WT Capital actively was litigating the Torigians' equitable claims.

> There is no change in the judgment.

Appellant's petition for rehearing is denied.

_____
KANE, Acting P. J.

I CONCUR:


_____
POOCHIGIAN, J.

Filed 6/24/15  (unmodified version)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| ANDRE TORIGIAN et al.,<br><br>  Plaintiffs and Respondents,<br><br>  v.<br><br>WT CAPITAL LENDER SERVICES,<br><br>  Defendant and Appellant. | F068393<br><br>(Super. Ct. No. 10CECG03800)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Donald S. Black, Judge.

Adelson, Hess & Kelly, Phillip M. Adleson, Lisa J. Parrella; Powell & Pool, Don J. Pool and Matthew G. Backowski for Defendant and Appellant.

Wright, Finlay & Zak, T. Robert Finlay and Jonathan D. Fink for United Trustees Association as Amicus Curiae on behalf of Defendant and Appellant.

Klein, DeNatale, Goldner, Cooper, Rosenlieb & Kimball, Catherine E. Bennett, David J. Cooper and Connie M. Parker for Plaintiffs and Respondents.

-ooOoo-

WT Capital Lender Services (WT Capital) appeals from a postjudgment order awarding Andre Torigian and Takoohi Torigian (the Torigians) their attorney fees and costs incurred in the litigation. The litigation involved both contract and tort causes of action. In its decision, the trial court considered only which party prevailed on the contract causes of action and failed to take into account the tort causes of action. We conclude the attorney fees provision in issue was broad enough to entitle the party prevailing in the action as a whole, not merely on the contractual claims, to an award of attorney fees and costs.

WT Capital did not contest the contract causes of action and successfully defended against the tort causes of action. Under these circumstances, we conclude either WT Capital prevailed on the contract causes of action or neither party could be found to have prevailed on the contract causes of action. In either case, WT Capital prevailed on the tort causes of action with a simple, unqualified win. The trial court thus abused its discretion by finding the Torigians were the prevailing parties. We reverse and remand to the trial court to enter a new order determining WT Capital to be the prevailing party and awarding WT Capital its attorney fees and costs.

## FACTUAL AND PROCEDURAL BACKGROUND

In February 2006, the Torigians borrowed $80,000 from defendant Gerald S. Shmavonian; the loan was confirmed by a promissory note and secured by a deed of trust on commercial property owned by the Torigians. The initial trustee on the deed of trust was Chicago Title Company. The Torigians paid off the loan in March 2006, but the deed of trust was not reconveyed to the Torigians.

In July 2010, Shmavonian retained WT Capital as his agent and instructed WT Capital to initiate a nonjudicial foreclosure against the Torigians. After WT Capital recorded a notice of default and election to sell under the deed of trust, the Torigians took their cancelled checks to WT Capital and advised it that the note had been paid. WT

2.

Capital contended it contacted Shmavonian, who said the note had not been paid and the payments the Torigians had made were for other loans. WT Capital advised the Torigians that it could not resolve the dispute between the trustor and the beneficiary. On October 27, 2010, a substitution of trustee was recorded, substituting WT Capital for Chicago Title Company as trustee under the deed of trust. On the same date, WT Capital recorded a notice of trustee's sale on Shmavonian's instructions.

On October 28, 2010, the Torigians filed their complaint against Shmavonian, WT Capital, and Debra Berg, an officer of WT Capital.[1] Against WT Capital the Torigians alleged causes of action for quiet title, declaratory relief, slander of title, negligence, and injunction. On November 24, 2010, without opposition from WT Capital, the Torigians obtained a preliminary injunction enjoining the trustee's sale.

On November 29, 2010, WT Capital filed a declaration of nonmonetary status pursuant to Civil Code section 2924*l*, in which it represented WT Capital was the trustee under the deed of trust and reasonably believed it had been named as a defendant in the Torigians' action solely in its capacity as trustee and not due to any act or omission in the performance of its duties as trustee. The declaration stated WT Capital agreed to be bound by whatever nonmonetary order or judgment the trial court issued regarding the deed of trust.

On the same date, WT Capital demurred to the original complaint, asserting WT Capital claimed no interest in the property in issue and had no actual controversy with the Torigians. It contended the causes of action for slander of title and negligence were barred by the litigation privilege of Civil Code section 47, subdivision (c)(1), and the cause of action for negligence also failed to allege a breach of any duty owed by the trustee to the trustor under the deed of trust or applicable statutes. The demurrer did not

---

[1]Berg's motion for summary judgment was granted, and she is not a party to this appeal.

3.

challenge the cause of action seeking injunctive relief. The Torigians subsequently filed a first, second, and third amended complaint, containing the same causes of action against WT Capital.

On January 6, 2011, prior to the filing of the first amended complaint, the Torigians moved for leave to file a late objection to WT Capital's declaration of nonmonetary status. WT Capital did not oppose the motion and it was granted. The Torigians filed an objection to the declaration, asserting they were suing WT Capital for monetary damages for negligence and slander of title and "[had] reason to believe that WT Capital participated in wrongful acts or omissions based on a capacity outside of its alleged substituted trustee duties, which are not privileged." Because of the Torigians' objection to WT Capital's declaration of nonmonetary status, WT Capital remained an active defendant in the action.

WT Capital successfully moved for summary adjudication of the negligence and slander of title (monetary) causes of action. Trial was bifurcated and the first phase addressed the Torigians' claims for monetary damages against Shmavonian; WT Capital did not participate in that phase of the trial. The second phase of trial addressed the equitable, nonmonetary claims against Shmavonian and WT Capital; WT Capital appeared at trial but did not oppose the Torigians' equitable claims. WT Capital asserts it appeared at the second phase of trial only because it was compelled to do so by a notice to appear.

Judgment was entered in favor of the Torigians and against Shmavonian on the monetary claims against him. The Torigians were awarded damages of $16,500. Judgment was entered in favor of the Torigians and against Shmavonian and WT Capital on the causes of action for quiet title, declaratory relief, and permanent injunction. The trial court enjoined the trustee's sale and ordered WT Capital to execute and record a reconveyance of the deed of trust, a notice of rescission of the notice of default, and a notice of rescission of the notice of trustee's sale.

4.

Both the Torigians and WT Capital filed memoranda of costs and motions to be awarded their attorney fees pursuant to an attorney fees provision in the deed of trust, claiming to be the prevailing party. Each party challenged the other's right to recover attorney fees and costs. The trial court granted the Torigians' motion for attorney fees and awarded them $120,834.50 against WT Capital and Shmavonian, jointly and severally. It granted the Torigians' motion to strike WT Capital's memorandum of costs, denied WT Capital's motion for attorney fees, and denied WT Capital's motion to strike the Torigians' memorandum of costs. WT Capital appeals from the order awarding the Torigians attorney fees and costs and denying WT Capital its attorney fees and costs.

## DISCUSSION

### I.     Standard of Review

Generally, an award of attorney fees is reviewed for abuse of discretion. (*Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169, 1175.) The determination of which party is the prevailing party and the determination of the amount to award as attorney fees are subject to review for abuse of discretion. (*Smith v. Krueger* (1983) 150 Cal.App.3d 752, 756-757 (*Smith*); *Glendora Community Redevelopment Agency v. Demeter* (1984) 155 Cal.App.3d 465, 474.) "When applying the deferential abuse of discretion standard, 'the trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious.'" (*In re C.B.* (2010) 190 Cal.App.4th 102, 123.)

Under the abuse of discretion standard, we will reverse when "the trial court exceeded '"the bounds of reason, all of the circumstances before it being considered"'" (*Smith*, *supra*, 150 Cal.App.3d at p. 757) or "when there is no substantial evidence to support the trial court's findings" (*Frei v. Davey* (2004) 124 Cal.App.4th 1506, 1512). A ruling based upon a misinterpretation of applicable law is also an abuse of discretion. (*Katiuzhinsky v. Perry* (2007) 152 Cal.App.4th 1288, 1294.)

5.

## II. Bases for Award of Attorney Fees as Costs

The trial court may make an award of attorney fees when such an award is specifically provided for by statute or agreed to by contract. (Code Civ. Proc., § 1021.) Attorney fees authorized by contract are recoverable as costs by the prevailing party in the action. (*Id.,* §§ 1032, subd. (b), 1033.5, subd. (a)(10)(A).) As such, they must be reasonably necessary to the conduct of the litigation and reasonable in amount. (*Id.,* § 1033.5, subd. (c)(2), (3).)

When a contractual provision for attorney fees "specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party," Civil Code section 1717 applies. (*Id.,* subd. (a).) It provides that, under those circumstances, "the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs." (*Ibid.*) "In determining whether an action is 'on the contract' under section 1717, the proper focus is not on the nature of the remedy, but on the basis of the cause of action." (*Kachlon v. Markowitz* (2008) 168 Cal.App.4th 316, 347 (*Kachlon*).)

> "The prevailing party determination under section 1717 must be based on the results of the litigated contract claims, 'without reference to the success or failure of noncontract claims.' [Citations.] 'When a party obtains a simple, unqualified victory by completely prevailing on or defeating *all contract claims in the action* and the contract contains a provision for attorney fees, section 1717 entitles the successful party to recover reasonable attorney fees incurred in prosecution or defense of those claims. [Citation.] If neither party achieves a complete victory *on all the contract claims*, it is within the discretion of the trial court to determine which party prevailed on the contract or whether, on balance, neither party prevailed sufficiently to justify an award of attorney fees.' [Citation.] Hence, 'the party who obtains greater relief on the contract action is the prevailing party entitled to attorney fees under section 1717, *regardless of whether another party also obtained* lesser relief on the contract or *greater relief on noncontractual claims*.'" (*Douglas E. Barnhart, Inc. v. CMC Fabricators, Inc.* (2012) 211 Cal.App.4th 230, 239-240.)

A declaratory relief claim seeking a declaration that the promissory note must be cancelled and the deed of trust reconveyed because the note was paid in full and the foreclosure violated the terms of the deed of trust is an action on the contract. (*Kachlon, supra*, 168 Cal.App.4th at pp. 347-348.) Further, a claim for an injunction based on an allegation a nonjudicial foreclosure proceeding violated the terms of the deed of trust and a quiet title claim seeking to enforce the provisions of a deed of trust requiring reconveyance upon satisfaction of the underlying debt constitute actions on the contract. (*Id*. at p. 348.) Thus, equitable, nonmonetary claims for quiet title, declaratory relief, and injunction, such as those asserted in the Torigians' pleadings, constitute claims on the contract for purposes of Civil Code section 1717.

The parties to a contract may agree to a broader attorney fees provision, not limited to actions or causes of action on the contract. The basic authorization for a contractual attorney fees provision states: "Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties." (Code Civ. Proc., § 1021.) "Under this statute, the allocation of attorney fees is left to the agreement of the parties. There is nothing in the statute that limits its application to contract actions alone. It is quite clear from the case law interpreting Code of Civil Procedure section 1021 that parties may validly agree that the prevailing party will be awarded attorney fees incurred in any litigation between themselves, whether such litigation sounds in tort or in contract." (*Xuereb v. Marcus & Millichap, Inc*. (1992) 3 Cal.App.4th 1338, 1341 (*Xuereb*).) When the attorney fees provision is broad enough to encompass tort causes of action, Civil Code section 1717 does not apply. (*Brown Bark III, L.P. v. Haver* (2013) 219 Cal.App.4th 809, 827-828.)

Contractual provisions for attorney fees have been held to apply only to actions on the contract when they provided that a purchaser agreed "'to pay all expenses, including reasonable attorney's fees … incurred in the collection, by suit or otherwise, of any

7.

amount payable under this contract'" (*Berge v. International Harvester Co.* (1983) 142 Cal.App.3d 152, 163, fn. 8) and where a lessee agreed to "'pay all costs and reasonable attorney's fees incurred [by the lessor] in any action brought by [the lessor] to enforce this agreement'" (*Plemon v. Nelson* (1983) 148 Cal.App.3d 720, 724, fn. 2).

In contrast, broader attorney fees provisions that are not limited to fees incurred to enforce the agreement or collect under it have been held to encompass awards of attorney fees incurred in litigation of tort or other noncontract causes of action. A fee agreement entitling the prevailing party to attorney fees "'[i]n any action, proceeding, or arbitration arising out of this agreement'" (*Adam v. DeCharon* (1995) 31 Cal.App.4th 708, 711, 712) or in an action "'arising out of the execution of this agreement'" (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 603, 608 (*Santisas*)) is broad enough to encompass both tort and contract actions (*Adam,* at p. 712; *Santisas,* at p. 608). Likewise, a provision for recovery by the prevailing party of attorney fees "[i]f this Agreement gives rise to a lawsuit or other legal proceeding between any of the parties hereto" (*Xuereb, supra,* 3 Cal.App.4th at p. 1340) is broad enough to encompass both contract and tort causes of action (*id.* at pp. 1342-1343). In *Maynard v. BTI Group, Inc.* (2013) 216 Cal.App.4th 984 (*Maynard*), the contract provided that "'All parties to this agreement agree to mediate, in good faith, any dispute prior to initiating arbitration or litigation. The prevailing party in the event of arbitration or litigation shall be entitled to costs and reasonable attorney fees.'" (*Id.* at p. 989.) The court held the provision for recovery of fees in "any dispute" encompassed all claims, in contract, tort, or otherwise, and was governed by Code of Civil Procedure section 1021. (*Maynard,* at pp. 993-994.)

In the deed of trust here, the Torigians agreed "to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable sum, in any action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Deed." The language "in any action or proceeding in which Beneficiary or Trustee may appear" is broader than a provision authorizing an award of

8.

attorney fees only in an action on the contract. It is broad enough to encompass an award of attorney fees on both contract and tort causes of action. Consequently, the trial court's determination of which party, if any, was entitled to an award of attorney fees should have been based on consideration of which party prevailed in the action as a whole, not just which party prevailed on the causes of action on the contract. The determination should have been made pursuant to the applicable provisions of the Code of Civil Procedure, not pursuant to Civil Code section 1717. (*Maynard*, *supra*, 216 Cal.App.4th at pp. 993-994.)

The trial court, in its decision on the parties' motions for attorney fees, did not discuss or analyze the scope of the attorney fees provision in the deed of trust to determine whether it was broad enough to encompass noncontract causes of action. Rather, it assumed the issue was governed by Civil Code section 1717, concluded only attorney fees incurred in litigating contract claims were in issue, and refused to consider WT Capital's success on the slander of title and negligence claims in determining which party, if any, was entitled to an award of attorney fees. This was error.

## III. Prevailing Party

### A. Definition

"'If … the contract allows the prevailing party to recover attorney fees but does not define "prevailing party" … a court may base its attorney fees decision on a pragmatic definition of the extent to which each party has realized its litigation objectives, whether by judgment, settlement, or otherwise.'" (*Maynard*, *supra*, 216 Cal.App.4th at p. 992.) "If the attorney fee provision does encompass noncontractual claims, the prevailing party entitled to recover fees normally will be the party whose net recovery is greater, in the sense of most accomplishing its litigation objectives, whether or not that party prevailed on a contract cause of action." (*Ibid.*)

The trial court may exercise its discretion to determine which party prevailed by comparing the relief sought with the relief obtained on the same claims, and the parties'

9.

litigation objectives as disclosed by their pleadings, trial briefs, opening statements and similar sources. (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 876.) The trial court should consider the parties' relative success on all causes of action in determining which party prevailed for purposes of an award of attorney fees. (*Maynard,* at p. 988.) The question to be determined is which party prevailed in the lawsuit, not which party prevailed "on the contract." (*Id*. at p. 993.)

### B. Tort causes of action

WT Capital prevailed on the tort causes of action. It moved for and was granted summary adjudication of the slander of title and negligence causes of action. It achieved a simple, unqualified win on those causes of action. (See, *Hsu*, *supra*, 9 Cal.4th at p. 876 [holding that, where the contract provided for attorney fees for the party prevailing on the contract, and the defendants obtained a simple, unqualified win on the only contract claim in the action, the defendants were the prevailing parties on the contract as a matter of law].)

### C. Contract causes of action

Determining the prevailing party on the contract causes of action—the equitable claims for quiet title, declaratory relief, and injunction—calls for analysis of the parties' litigation objectives, the relief they sought, and the relief they obtained or failed to obtain. (*Chinn v. KMR Property Management* (2008) 166 Cal.App.4th 175, 188; *Santisas, supra*, 17 Cal.4th at p. 622.)

The Torigians claim their "main litigation objective was to save their property from wrongful foreclosure and prevent WT Capital [from] pursuing nonjudicial foreclosure." They assert they achieved a simple, unqualified win on the equitable claims, preventing foreclosure and confirming their title to the property. They conclude they prevailed on the contract and therefore were entitled to their attorney fees.

WT Capital argues that on the equitable causes of action, its litigation objective was to remain neutral in the dispute between trustor and beneficiary. It attempted to

remain neutral by filing the declaration of nonmonetary status, refraining from opposing the equitable claims once it was compelled to respond to the complaint and putting in issue only the allegations about which it had no knowledge or information of record and leaving the other parties to resolve their disputes. WT Capital contends that because it filed the declaration of nonmonetary status indicating it did not oppose the equitable claims, the Torigians' only viable litigation objective as to WT Capital was to obtain a monetary recovery on the tort causes of action, which they failed to do. Thus, WT Capital concludes it was the prevailing party or, at worst, there was no prevailing party on the nonmonetary causes of action.

The "'pleadings, briefs, and other such sources'" indicate the litigation objectives of the parties. (*Chinn*, *supra*, 166 Cal.App.4th at p. 188.) Civil Code section 2924*l* authorizes the filing of a declaration of nonmonetary status in an action against the trustee under a deed of trust.

> "In the event that a trustee under a deed of trust is named in an action or proceeding in which that deed of trust is the subject, and in the event that the trustee maintains a reasonable belief that it has been named in the action or proceeding solely in its capacity as trustee, and not arising out of any wrongful acts or omissions on its part in the performance of its duties as trustee, then, at any time, the trustee may file a declaration of nonmonetary status." (*Id.,* subd. (a).)

The declaration must identify the trustee as trustee under the deed of trust in issue, set forth the basis for [the trustee's] belief it has been sued only as trustee and not for any acts or omissions in the performance of its duties as trustee, and state "that it agrees to be bound by whatever order or judgment is issued by the court regarding the subject deed of trust." (Civ. Code, § 2924*l*, subd. (b).) Other parties have 15 days to object to the declaration. (*Id.,* subd. (c).) If no objection is filed, "the trustee shall not be required to participate any further in the action or proceeding, shall not be subject to any monetary awards as and for damages, attorneys' fees or costs, shall be required to respond to any discovery requests as a nonparty, and shall be bound by any court order relating to the

11.

subject deed of trust that is the subject of the action or proceeding." (*Id.,* subd. (d).) If an objection is filed, the trustee must participate in the action. (*Id.,* subd. (e).)

The Torigians' original complaint alleged causes of action against WT Capital for quiet title, declaratory relief, injunction, slander of title, and negligence. As its initial response to the complaint, WT Capital filed both a declaration of nonmonetary status and a demurrer.

The declaration of nonmonetary status filed by WT Capital identified the deed of trust in issue and stated WT Capital was the current trustee of record under the deed of trust, which was executed by the Torigians as trustors and Shmavonian as beneficiary. The declarant, WT Capital's senior vice-president, stated she reasonably believed WT Capital was named as a defendant in the matter solely in its capacity as a trustee under the deed of trust, and "has not been named as a defendant … due to any acts or omissions on its part in the performance of its duties as Trustee, inasmuch as the Complaint fails to contain any allegations of wrongdoing as to this defendant. The basis for this belief is that the alleged wrongdoing set forth in the Complaint is based solely on WT's performance of its statutory duties as Trustee and is privileged pursuant to California Civil Code section 47, subsection (c)(1)." The declaration additionally stated: "WT does hereby agree to be bound by whatever nonmonetary order or judgment is issued by this Court regarding the subject Deed of Trust."

WT Capital demurred to the slander of title and negligence causes of action on the ground they were barred by the common interest privilege of Civil Code section 47, subdivision (c)(1) and to the negligence cause of action on the additional ground WT Capital owed no duty to the Torigians that was breached by the actions the Torigians alleged as breaches of duty. Additionally, the demurrer asserted the quiet title and declaratory relief causes of action failed to state a cause of action against WT Capital because WT Capital did not claim any interest in the Torigians' property and the only actual dispute alleged was between the Torigians and Shmavonian.

12.

WT Capital did not demur to the cause of action for injunctive relief. Initially, WT Capital's only response to that cause of action was its declaration of nonmonetary status, in which it submitted to whatever order the trial court might enter. The cause of action for injunctive relief sought to restrain the nonjudicial foreclosure sale and compel reconveyance of the deed of trust and rescission of the notice of default and the notice of trustee's sale. This is the relief that corresponds to the Torigians' professed main litigation objective: to prevent the nonjudicial foreclosure and the trustee's sale of their property. Through its declaration of nonmonetary status, WT Capital indicated from the outset that it did not oppose that relief.

Thus, in both the demurrer and the declaration of nonmonetary status, WT Capital took the position that the tort causes of action contained in the complaint did not state viable causes of action against WT Capital because the conduct alleged was privileged or did not constitute breach of any duty owed by WT Capital to the Torigians. WT Capital did not contest the Torigians' request for injunctive relief and indicated it would submit to the trial court's order on the nonmonetary claims.

The Torigians filed an objection to WT Capital's declaration of nonmonetary status. It stated: "The complaint includes claims for monetary damages against WT Capital for negligence and slander of title. [Citation.] Mr. and Mrs. Torigian asserted these claims based on their information and belief that … WT Capital consciously and recklessly disregarded its duties by pursuing the foreclosure while on notice that the Torigians satisfied the underlying loan." The Torigians also asserted WT Capital's demurrer was evidence of its "resistance to be subject to any court order in this action."

The Torigians contend their "main litigation objective was to save their property from wrongful foreclosure and prevent WT Capital [from] pursuing nonjudicial foreclosure." WT Capital, however, did not oppose the cause of action for an injunction, which sought to enjoin the foreclosure. The Torigians filed a first, second, and third amended complaint, each asserting the same tort causes of action against WT Capital as

13.

in the original complaint. The Torigians' complaints and their objection to WT Capital's declaration of nonmonetary status suggest another objective of the Torigians in this litigation was to recover monetary damages from WT Capital for alleged slander of title and negligence. The Torigians failed to achieve that objective.

On the declaratory relief and quiet title causes of action, the Torigians obtained a judgment in their favor against the named defendants and all persons unknown claiming any legal or equitable right, title, or interest in the subject property; the judgment declared that the Torigians were the "100% legal and equitable owners" of the real property in issue, and it declared any adverse title invalid. It further declared that Shmavonian had no contractual right to declare a default, to instruct WT Capital to record a notice of default, or to instruct WT Capital to record a notice of trustee's sale. The judgment permanently enjoined all defendants from participating in any sale, transfer, or foreclosure of the property under the deed of trust and ordered WT Capital to execute and record a full reconveyance of the deed of trust to the Torigians, a notice of rescission of the notice of default, and a notice of rescission of the notice of trustee's sale.

WT Capital never claimed any adverse interest in the Torigians' property, so it was not affected by the provisions of the judgment relating to the Torigians' title. The other relief the Torigians were awarded was relief WT Capital indicated in its declaration of nonmonetary status that it would not oppose, but agreed to be bound by. Thus, on the nonmonetary causes of action, the Torigians obtained a judgment in their favor, but obtained no relief other than that to which WT Capital submitted at the outset of the litigation. The Torigians could have achieved the same result without litigating their equitable claims against WT Capital simply by accepting the declaration of nonmonetary status without objection. The Torigians' only claim to prevailing party status is that they prevailed on claims WT Capital did not contest. Obtaining judgment on uncontested claims does not constitute a simple, unqualified win, as they assert. When the result on the equitable causes of action is combined with the result in favor of WT Capital on the

14.

tort causes of action, the facts do not support a finding that the Torigians were the prevailing party in the action as a whole.

### D.     *Kachlon v. Markowitz*

The trial court and the Torigians both relied on *Kachlon, supra,* 168 Cal.App.4th 316, as authority for the award to the Torigians.  They claim the facts in that case are almost exactly the same as those here.  Not so.

The trial court rejected WT Capital's argument that it should be determined to be the prevailing party because the Torigians obtained nothing more than the relief to which WT Capital agreed in the declaration of nonmonetary status, and WT Capital did not oppose, contest, or defend against the Torigians' nonmonetary claims.  The trial court concluded instead that a trustee under a deed of trust may be held liable for the trustor's attorney fees, despite filing a declaration of nonmonetary status, when the trustor objects to the declaration and the trustee consistently allies itself with the beneficiary during the litigation.  The trial court's conclusion WT Capital failed to remain neutral on the nonmonetary claims, indicating one of its litigation objectives was to defeat the nonmonetary claims, is not supported by the evidence.

In *Kachlon*, the trustors, under a deed of trust, sued the beneficiaries and the substituted trustee for wrongfully initiating nonjudicial foreclosure proceedings under the deed of trust, contending the promissory note that was secured by the deed of trust had been satisfied fully.  (*Kachlon*, *supra*, 168 Cal.App.4th at pp. 324, 329.)  Against the trustee, the plaintiffs alleged causes of action for quiet title, declaratory relief, injunction against foreclosure, slander of title, and negligence.  (*Id.* at p. 329.)

The trial court found in favor of the trustee on the slander of title and negligence causes of action on the ground the trustee's conduct was privileged pursuant to Civil Code sections 47 and 2924.  (*Kachlon, supra,* 168 Cal.App.4th at pp. 330, 331-332.)  It granted the plaintiffs relief on the equitable causes of action, cancelling the promissory note, ordering the trustee to reconvey the deed of trust and rescind the foreclosure,

15.

enjoining the beneficiaries and trustee from claiming a default or exercising the power of sale, and quieting title in favor of the plaintiffs. (*Id*. at pp. 330-331.)

The plaintiffs then moved for an award of attorney fees on the equitable claims; they were found to be the prevailing parties and were awarded fees pursuant to Civil Code section 1717 against the trustee and the beneficiaries, jointly and severally. (*Kachlon, supra,* 168 Cal.App.4th at p. 331.) Subsequently, the trustee filed a declaration of nonmonetary status and unsuccessfully moved to vacate the plaintiffs' award of attorney fees. (*Id*. at p. 332.)

The court upheld the attorney fees award against the trustee. Although the language of the attorney fees provision in *Kachlon* was almost identical to the provision in the deed of trust here, and broad enough to encompass both tort and contract claims, the *Kachlon* court analyzed it only under Civil Code section 1717. In determining the prevailing party, the court considered only the outcome of the equitable causes of action, which it found to be "on the contract." (*Kachlon*, *supra*, 168 Cal.App.4th at pp. 346-348.) Thus, the court failed to consider the effect of the trustee's victory on the tort causes of action in making its prevailing party determination.

In determining the prevailing party under Civil Code section 1717, the *Kachlon* court applied """"a pragmatic definition of the extent to which each party has realized its litigation objectives."""" (*Kachlon, supra*, 168 Cal.App.4th at p. 349.) The court rejected the trustee's claim it had remained neutral throughout the litigation and its only litigation objective was to defeat the tort causes of action, which it fully achieved. (*Id*. at p. 349.) The court concluded the record supported a pragmatic determination the trustee had not remained neutral on the equitable causes of action. (*Id*. at pp. 349-350.) Rather, it "consistently allied itself with the [beneficiaries] on the essential issues relevant to the claims on the note and deed of trust." (*Id*. at p. 350.)

In its answer, the trustee "denied that it caused a false notice of default to be recorded, denied that the notice of default was improper, denied that the promissory note

16.

had been paid in full, and denied that the deed of trust improperly remained of record." (*Kachlon, supra,* 168 Cal.App.4th at p. 350.) It also asserted the trustors were not entitled to injunctive relief or quiet title. (*Ibid*.) The trustee joined in the beneficiaries' opposition to one plaintiff's motion for summary judgment, substituted the beneficiaries' counsel as its own, filed a joint trial brief with the beneficiaries, and declared in the trial brief that it would hotly contest the allegation that the promissory note had been paid in full. (*Ibid*.) Further, the trustee filed its declaration of nonmonetary status only after the trial had been completed.

The court acknowledged the trustors likely would have objected to the declaration if it had been filed earlier, but noted that "by filing such a declaration, at least prior to the trial court's bifurcated determination of the equitable claims based on the note and deed of trust, [the trustee] would have timely articulated the position that it considered itself merely a nominal defendant on those claims with no interest in the outcome. That [the trustee] failed to do so reinforces the conclusion that it was not neutral in the litigation and that its objectives were not limited to defending against the damage claims." (*Kachlon, supra,* 168 Cal.App.4th at p. 350.)

Here, WT Capital filed a declaration of nonmonetary status at the time it responded to the original complaint -- long before the equitable causes of action went to trial. In the declaration, WT Capital noted the monetary causes of action were based on privileged conduct and "agree[d] to be bound by whatever nonmonetary order or judgment [was] issued by the Court regarding the subject Deed of Trust." Consistent with these assertions, WT Capital demurred to the complaint, asserting privilege as a bar to the tort causes of action and asserting it claimed no interest in the Torigians' property and had no dispute with the Torigians to bring it within the quiet title and declaratory relief causes of action. WT Capital never demurred to the cause of action seeking injunctive relief against the nonjudicial foreclosure. After the first amended complaint was filed, WT Capital demurred only to the tort causes of action.

17.

WT Capital did not oppose the Torigians' request for a temporary restraining order and a preliminary injunction to enjoin the nonjudicial foreclosure sale. It did not participate in the first phase of the trial and, at the second phase of the trial, which addressed the equitable claims, WT Capital appeared but did not oppose the Torigians' claims.

The trial court concluded that WT Capital, like the trustee in *Kachlon*, failed to remain neutral with respect to the equitable claims. It stated:

> "After filing its Declaration of Non-Monetary Status, WT filed a verified answer to plaintiffs' third amended complaint in which it disputed plaintiffs' claims for quiet title and denied that plaintiffs were the one hundred per cent owners of the property and denied that Shmavonian's attempted enforcement of the deed of trust was wrongful. WT also denied plaintiffs' claim for declaratory relief and their allegations in support of a permanent injunction. WT prayed that plaintiffs take nothing by reason of their complaint. WT engaged in discovery with regard to the factual issue of whether plaintiffs paid off the $80,000 note, the core issue in the case."

The trial court concluded the declaration of nonmonetary status did not insulate WT Capital from an award of attorney fees "because it was objected to and because, both before and after … its filing, WT was not a neutral participant in the case but rather actively opposed the relief, both monetary and non-monetary, sought by plaintiffs."

The answer to a complaint is required to contain "[t]he general or specific denial of the material allegations of the complaint controverted by the defendant" and "[a] statement of any new matter constituting a defense." (Code Civ. Proc., § 431.30, subd. (b)(1), (2).) When the complaint is verified, the answer is required to be verified. (*Id.,* § 446, subd. (a).) A general denial is not appropriate in a verified answer. (*City of Hollister v. Monterey Ins. Co.* (2008) 165 Cal.App.4th 455, 476, fn. 19.) Rather, "the denial of the allegations shall be made positively or according to the information and belief of the defendant." (Code Civ. Proc., § 431.30, subd. (d).) "If the defendant has no information or belief upon the subject sufficient to enable him or her to answer an

18.

allegation of the complaint, he or she may so state in his or her answer and place his or her denial on that ground." (*Id.,* subd. (e).) Thus, if a defendant has insufficient information on which to either admit or deny an allegation, a denial based on lack of information is an appropriate response.

Because the third amended complaint was verified, WT Capital was required to file a verified answer if it wished to contest any of the claims alleged. In its verified answer, WT Capital admitted some allegations, denied others, denied some on the basis of its information, and denied some on the ground it lacked sufficient information to either admit or deny the allegations. The trial court, by considering isolated allegations contained in WT Capital's answer, concluded WT Capital did not remain neutral.

While WT Capital's answer to the quiet title cause of action denied some of the facts alleged by the Torigians, the answer as a whole did not dispute the Torigians' equitable claims. In response to the general allegations of the third amended complaint, WT Capital denied, based on lack of information, that the Torigians paid the full amount owed under the note and deed of trust in March 2006; it asserted Shmavonian disputed the Torigians' claim the obligation was repaid. This denial was consistent with Shmavonian's verified answers to the original and third amended complaints, which alleged that the $80,000 check the Torigians contended proved payment of the loan actually reflected payment on other loans he had made to them. WT Capital was required to admit or deny the allegations of the Torigians' third amended complaint. The trial court interpreted WT Capital's denial, based on lack of information, that the Torigians paid the debt in full as evidence of WT Capital's lack of neutrality. An admission that the Torigians paid the obligation in full, however, would not have been consistent with neutrality; rather, it would have suggested WT Capital was siding with the Torigians.

In response to the quiet title and declaratory relief causes of action, WT Capital acknowledged the dispute between the Torigians and Shmavonian about whether the debt secured by the deed of trust in issue had been paid. In response to the cause of action for

19.

injunctive relief, WT Capital repeatedly asserted that it had filed a declaration of nonmonetary status in which it agreed to be bound by whatever nonmonetary order or judgment the court issued regarding the deed of trust. Additionally, in WT Capital's 15th affirmative defense, which was not limited to any particular cause of action, WT Capital again asserted it had filed a declaration of nonmonetary status in which it agreed to be bound by any nonmonetary order entered by the trial court. Thus, the allegations of WT Capital's answer, taken as a whole, reflect that the Torigians claimed payment of the debt, Shmavonian disputed payment had been made, WT Capital lacked information concerning whether payment had been made, and on that basis it denied the Torigians' allegations that the nonjudicial foreclosure proceeding was wrongful; WT Capital also agreed to be bound by whatever nonmonetary judgment the trial court entered on the equitable causes of action.

The trial court also noted the answer contained a prayer that "plaintiffs take nothing by the complaint." One commentator states: "Although not really necessary, it is customary to include the following wording at the end of the answer: [¶] 'WHEREFORE, defendant prays that plaintiff take nothing by the complaint, and that defendant be awarded judgment in this action ….'" (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2014) ¶ 6:482, p. 6-129 (rev. #1, 2013).) Consistent with this custom, WT Capital included at the end of its answer a prayer that the Torigians take nothing by their complaint. Such a prayer was appropriate as to the tort causes of action, in which the Torigians sought monetary damages from WT Capital. In determining the prevailing party in an action, courts are to "'respect substance rather than form, and to this extent … be guided by "equitable considerations."'" (*Maynard, supra*, 216 Cal.App.4th at p. 992.) The formal addition to the answer of language requesting that the Torigians take nothing by the complaint, which was consistent with WT Capital's position on the monetary damages claims, should not be interpreted to override the express representations in both the answer and WT Capital's declaration of

20.

nonmonetary status that WT Capital agreed to be bound by whatever nonmonetary order the trial court entered concerning the deed of trust. The allegations of the answer do not support the trial court's conclusion that WT Capital opposed or lacked neutrality as to the equitable causes of action.

The trial court's conclusion that WT Capital did not remain neutral on the equitable causes of action also was based on its finding that "WT engaged in discovery with regard to the factual issue of whether plaintiffs paid off the $80,000 note, the core issue in the case."

The slander of title cause of action was based on allegations WT Capital falsely published a notice of default, a notice of trustee's sale, and an ongoing deed of trust against the property. It alleged WT Capital knew or should have known that the Torigians had paid the note in full and that the foreclosure sale was unlawful, but it proceeded with the foreclosure sale despite this knowledge. The negligence cause of action alleged that WT Capital, as trustee under the deed of trust, owed a duty to the Torigians as trustors to abstain from or suspend pursuit of the unlawful foreclosure sale of the property. It alleged WT Capital breached its duty by continuing to pursue the foreclosure sale, despite being put on notice of its unlawfulness.

The central premise of each tort cause of action is that the attempted nonjudicial foreclosure sale of the property was unlawful because the Torigians already had paid the underlying obligation in full. Consequently, discovery concerning this central issue was relevant to, and justified by, WT Capital's defense of the tort causes of action alleged against it. Although WT Capital ultimately prevailed on the tort causes of action on grounds other than nonpayment of the debt, that outcome does not demonstrate that discovery into an alternative means of defeating the claims was unnecessary or improper, rather than the strategy of a prudent, careful attorney. Conducting discovery on a key issue common to the tort and equitable causes of action is not evidence of a lack of neutrality on the equitable causes of action.

21.

Thus, this case is distinguishable from *Kachlon*. Unlike the trustee in *Kachlon*, WT Capital did not share counsel with the beneficiary; it did not file papers jointly with the beneficiary; it did not oppose a plaintiff's motion for summary judgment; and it did not file a joint trial brief with the beneficiary that declared the trustee would hotly contest the allegation that the note was paid in full.

Unlike the trustee in *Kachlon*, WT Capital filed its declaration of nonmonetary status at the outset of the litigation, not after the trial, timely articulating its position that it was merely a nominal defendant on the equitable claims, with no interest in the outcome. Consistent with that declaration, WT Capital asserted in its answer that it had no knowledge regarding whether the Torigians had paid their loan, and it denied payment on that basis; it agreed to be bound by any decision of the trial court on the equitable causes of action. WT Capital did not oppose the Torigians' requests for a temporary restraining order and a preliminary injunction preventing further actions in the nonjudicial foreclosure proceeding. Although WT Capital appeared at the second phase of trial, it did not oppose the causes of action for equitable relief and it did not contest the Torigians' claim they had paid the debt in full.

Unlike *Kachlon*, the trustee's conduct here does not demonstrate it had litigation objectives beyond defending against the tort causes of action seeking monetary relief and remaining neutral and submitting to the trial court's judgment on the nonmonetary causes of action.

The Torigians argue WT Capital's lack of neutrality and broader litigation objectives are demonstrated by the bills it incurred for attorney fees prior to the date the Torigians filed their objection to WT Capital's declaration of nonmonetary status. The Torigians contend that if WT Capital had believed the statements it made in the declaration—that it was not sued for any acts or omissions in the performance of its duties as trustee—then WT Capital would not have participated in the action and incurred attorney fees.

22.

This argument fails for several reasons. First, the trial court did not base its exercise of discretion on WT Capital's bills for its attorney fees. Further, the Torigians' argument ignores their moving for leave to file an untimely objection to the declaration of nonmonetary status three months before they filed it, giving WT Capital advance notice that an objection would be filed later.[2]

This argument also ignores the state of the pleadings and the position WT Capital took in response to the Torigians' complaints. The Torigians' initial complaint contained causes of action for slander of title and negligence against WT Capital, so it did allege wrongdoing by WT Capital. WT Capital took the position, however, that the allegations failed to state a cause of action against it because WT Capital's acts in connection with the nonjudicial foreclosure proceedings were privileged and the negligence cause of action did not allege breach of any duty WT Capital actually owed to the Torigians. WT Capital attempted to dispose of the tort causes of action at the outset by establishing their invalidity by demurrer. The pleading stage of the litigation was not completed until after the Torigians filed their objection to the declaration of nonmonetary status. WT Capital was not successful at resolving the tort causes of action in its favor by demurrer, but it later was successful at disposing of them by motion for summary adjudication on similar grounds. Thus, the attorney fees incurred prior to the filing of the Torigians' declaration of nonmonetary status were incurred during the pleading stage of the litigation and do not indicate WT Capital actively was litigating the Torigians' equitable claims.

### E.  *WT Capital as substituted trustee*

The Torigians contend the attorney fees provision in the deed of trust does not benefit WT Capital because WT Capital was not the trustee of record at the time the actions giving rise to the slander of title and negligence causes of action occurred.

---

[2]WT Capital did not oppose the Torigians' motion for relief to enable them to file a late objection to the declaration of nonmonetary status.

23.

The notice of default and election to sell was recorded in July 2010. The substitution of trustee naming WT Capital as the new trustee and the notice of trustee's sale were recorded on October 27, 2010.

The Torigians' original complaint was filed the next day, October 28, 2010. Their operative complaint, the third amended complaint, alleged: WT Capital recorded the notice of default and mailed a copy to the Torigians in July, 2010; the Torigians and their attorney communicated with WT Capital in August 2010, trying to convince WT Capital that the Torigians already had paid off the loan and were not in default; and WT Capital also recorded a notice of trustee's sale.

The slander of title cause of action is based on WT Capital's alleged false recording of the notice of default and notice of trustee's sale and its refusal to suspend the trustee's sale in light of the Torigians' evidence of payment. The negligence cause of action alleged WT Capital breached duties to the Torigians by actively pursuing a nonjudicial foreclosure sale, including giving notice of a date for the trustee's sale. Thus, the Torigians' causes of action against WT Capital alleged conduct that occurred both before and at the time the substitution of trustee was recorded and continued thereafter. The Torigians' contention that all the pertinent conduct occurred before WT Capital became the trustee is not supported by the record.

Further, the provision for attorney fees is broad:

"To protect the security of this Deed of Trust, Trustor agrees: [¶]…[¶]

"(3) To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; and to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable sum, in any action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Deed."

This provision required plaintiffs to "defend any action … purporting to affect … the rights or powers of Beneficiary or Trustee." In this action, the Torigians challenged

24.

the right of the beneficiary and trustee to conduct a nonjudicial foreclosure sale of the Torigians' property. They sought to impose an obligation on the trustee to investigate the status of the underlying debt and determine whether the Torigians actually were in default before the trustee could proceed with a nonjudicial foreclosure. The attorney fees provision also obligated the Torigians to pay reasonable attorney fees "in any action … in which Beneficiary or Trustee may appear." This was an action in which the trustee appeared. WT Capital was the trustee under the deed of trust at the time the litigation against it was initiated and throughout the litigation. All of WT Capital's attorney fees in the litigation for which it sought compensation were incurred while it was the trustee of record. Consequently, the Torigians' argument that the attorney fees provision does not apply to WT Capital because it was not the trustee at the time all of the challenged conduct fails.

## IV. Costs

Generally, the party prevailing in litigation is entitled to recover its costs as a matter of right. (Code Civ. Proc., § 1032, subd. (b).)

> "'Prevailing party' includes the party with a net monetary recovery, a defendant in whose favor a dismissal is entered, a defendant where neither plaintiff nor defendant obtains any relief, and a defendant as against those plaintiffs who do not recover any relief against that defendant. When any party recovers other than monetary relief and in situations other than as specified, the 'prevailing party' shall be as determined by the court, and under those circumstances, the court, in its discretion, may allow costs or not and, if allowed may apportion costs between the parties on the same or adverse sides pursuant to rules adopted under [Code of Civil Procedure] Section 1034." (*Id.,* subd. (a)(4).)

Under this section, costs are available as a matter of right when the prevailing party falls within one of the four categories expressly designated. (*Chinn, supra,* 166 Cal.App.4th at p. 188.)

Neither party in this case falls within any of those categories—neither party obtained a monetary recovery, the claims against WT Capital were not dismissed, and the

25.

Torigians obtained a judgment against WT Capital. Hence, this action falls within the catch-all provision because the situation was "other than as specified," and the court was required to determine the prevailing party. (Code Civ. Proc., § 1032, subd. (a)(4).) When the case falls within the catch-all provision, "the trial court in its discretion determines the prevailing party, comparing the relief sought with that obtained, along with the parties' litigation objectives as disclosed by their pleadings, briefs, and other such sources." (*On-Line Power, Inc. v. Mazur* (2007) 149 Cal.App.4th 1079, 1087.) Thus, the standard is the same as that applied in determining the prevailing party for purposes of an award of attorney fees under Code of Civil Procedure section 1021.

WT Capital accomplished its objective of defeating the tort claims against it and did not oppose nonmonetary relief. The Torigians failed to obtain any monetary relief and obtained only the nonmonetary relief that was unopposed by WT Capital. We conclude the trial court abused its discretion by determining the Torigians to be the prevailing parties for purposes of an award of costs.

## DISPOSITION

The August 21, 2013, order awarding the Torigians their attorney fees and costs against WT Capital and denying WT Capital its attorney fees and costs against the Torigians is reversed. The trial court is directed to enter a new order determining WT Capital to be the prevailing party in the action and awarding WT Capital its attorney fees and costs against the Torigians. The matter is remanded to the trial court to determine the amount of attorney fees and costs to be awarded to WT Capital. The portion of the August 21, 2013, order awarding the Torigians their attorney fees and costs against Shmavonian is unaffected by this disposition. WT Capital shall recover its costs on appeal.

_____

CORNELL, Acting P. J.

WE CONCUR:


_____

KANE, J.


_____

POOCHIGIAN, J.